# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISION

| | |
|---|---|
| CITY OF OMAHA POLICE AND FIRE RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>   - against-<br><br><br>LHC GROUP, INC. AND KEITH G. MYERS,<br><br>                   Defendants. | **Case No. 6:12-CV-01609-JTT-CMH**<br><br><br>**MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |

# TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................................. 1

II.   FACTUAL AND PROCEDURAL HISTORY ..................................................... 2

III.   THE SETTLMENT MEETS THE CRITERIA NECESSARY
FOR THIS COURT TO GRANT PRELIMINARY APPROVAL......................... 4

    A.   The Proposed Settlement Is Fair and Reasonable Under the
Fifth Circuit's Six-Pronged Test of Fairness ............................................. 6

        1.   There Is No Fraud or Collusion Behind the Settlement................. 7

        2.   The Stage of the Proceedings and the Amount of
Discovery Completed...................................................................... 8

        3.   The Probability of Success on the Merits ..................................... 9

        4.   The Settlement Falls Within the Range of
Reasonableness ............................................................................ 10

        5.   The Complexity, Expense, and Likely Duration
of Litigation ................................................................................. 11

        6.   The Opinions of Class Counsel, the Class Representative,
and Absent Class Members........................................................... 13

IV.   THE SETTLEMENT CLASS SHOULD BE CERTIFIED FOR
SETTLEMENT PURPOSES ........................................................................... 13

    A.   The Putative Class Is Sufficiently Numerous ........................................... 14

    B.   Common Questions of Law or Fact Exist................................................. 15

    C.   Lead Plaintiff's Claims are Typical of Those of the Class ....................... 16

    D.   Lead Plaintiff is a More Than Adequate Representative of
the Class ................................................................................................... 17

    E.   The Requirements of Rule 23(b)(3) Are Satisfied ................................... 18

        1.   Common Legal and Factual Questions Predominate
in the Litigation............................................................................ 18

        2.   The Class Action Is Superior To Other Methods
Of Adjudication ........................................................................... 19

    F.   The Court Should Appoint Lead And Liaison Counsel
As Counsel For The Class........................................................................ 21

V.   THE PROPOSED FORM AND METHOD OF NOTICE TO
THE CLASS IS APPROPRIATE ................................................................... 21

VI.   PROPOSED SCHEDULE ............................................................................... 24

VII.   CONCLUSION................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amchem Products, Inc. v. Windsor,*
  521 U.S. 591 (1997)......................................................................................... *passim*

*Blackie v. Barrack,*
  524 F.2d 891 (9th Cir. 1975) ...........................................................................14

*by Wal-Mart Stores, Inc. v. Dukes,*
  131 S.Ct. 2541 (2011).......................................................................................15

*Clark v. Lomas & Nettleton Fin. Corp.,*
  79 F.R.D. 641 (N.D. Tex. 1978), *vacated on other grounds,* 625 F. 2d 49 (5th
  Cir. 1980) ..........................................................................................................12

*Cotton v. Hinton,*
  559 F.2d 1326 (5th Cir. 1977) ...........................................................................5

*Detroit v. Grinnell Corp.,*
  495 F.2d 448 (2d Cir. 1974)..............................................................................11

*Durrett v. John Deere Co.,*
  150 F.R.D. 555 (N.D. Tex. 1993) ...........................................................16, 19, 20

*Eatmon v. Palisades Collection, LLC,*
  No. 08-CV-306-DF-CE, 2010 WL 1189571 (E.D. Tex. Mar. 5, 2010) .................18

*Faircloth v. Certified Fin. Inc.,*
  No. Civ.A. 99-3097, 2001 WL 527489 (E.D. La. May 16, 2001)...........................8

*Fickinger v. C.I. Planning Corp.,*
  646 F. Supp. 622 (E.D. Pa. 1986) .....................................................................11

*Forbush v. J.C. Penney Co., Inc.,*
  994 F.2d 1101 (5th Cir. 1993) ...........................................................................15

*In re Chicken, Antitrust Litig.,*
  669 F.2d 228 (5th Cir 1982) ..............................................................................11

*In re Drexel Burnham Lambert Group, Inc.,*
  960 F.2d 285 (2d Cir. 1992)..........................................................................16, 17

*In re Elec. Data Sys. Corp. Secs. Litig.,*
  226 F.R.D. 559 (E.D. Tex. 2005), *aff'd,* 429 F.3d 125 (5th Cir. 2005).................16

*In re Enron Corp. Sec. & ERISA Litig.*,
   No. H-01-3624, 2003 WL 22494413 (S.D. Tex. July 24, 2003) .......................................14, 24

*In re FirstPlus Fin. Group, Inc., Sec. Litig.*,
   No. 3:98-CV-2551-M, 2002 WL 31415951 (N.D. Tex. Oct. 23, 2002)................................16

*In re NASDAQ Market-Makers Antitrust Litig.*,
   176 F.R.D. 99 (S.D.N.Y. 1997) .........................................................................................5, 6

*In re NeoPharm, Inc. Sec. Litig.*,
   225 F.R.D. 563 (N.D. Ill. 2004).............................................................................................15

*In re Nissan Motor Corp. Antitrust Litig.*,
   552 F.2d 1088 (5th Cir. 1977) ...............................................................................................22

*In re OCA, Inc. Sec. & Deriv. Litig.*,
   CIV A 05-2165, 2008 WL 4681369 (E.D. La. Oct. 17, 2008) ................................................24

*In re Reliant Sec. Litig.*,
   No. H-02-1810, 2005 U.S. Dist. LEXIS 9716 (S.D. Tex. Feb. 18, 2005) ..............................15

*In re Seitel, Inc. Secs. Litig.*,
   245 F.R.D. 263 (S.D. Tex. June 26, 2007) ............................................................................12

*In re Shell Oil Refinery*,
   155 F.R.D 552 (E.D. La. 1993).............................................................................................23

*In re Sys. Software Assocs., Inc. Sec. Litig.*,
   No. 97 C 177, 2000 WL 1810085 (N.D. Ill. Dec. 8, 2000) ...................................................19

*In re Tableware Antitrust Litig.*,
   484 F. Supp. 2d 1078 (N.D. Cal. 2007) ..................................................................................5

*In re Warner Commc'ns Sec. Litig.*,
   618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) ...................................10

*In re Wireless Facilities, Inc. Sec. Litig.*,
   253 F.R.D. 630 (S.D. Cal. 2008) .........................................................................................16

*Lehocky v. Tidel Techs., Inc.*,
   220 F.R.D. 491 (S.D. Tex. 2004)......................................................................................19, 20

*Lewis v. Newman*,
   59 F.R.D. 525 (S.D.N.Y. 1973) ............................................................................................10

*Longden v. Sunderman*,
   123 F.R.D. 547 (N.D. Tex. 1988) .....................................................................................17, 19

iii

*Maher v. Zapata Corp.*,
714 F.2d 436 (5th Cir. 1983) ........................................................5

*Manchaca v. Chater*,
927 F. Supp. 962 (E.D. Tex. 1996).............................................8, 11

*Matrixx Initiatives, Inc. v. Siracusano*,
131 S. Ct. 1309 (2011).....................................................................9

*McNamara v. Bre-X Minerals Ltd.*,
214 F.R.D. 424 (E.D. Tex. 2002)..................................................5, 6

*McNary v. Am. Sav. & Loan Ass'n*,
76 F.R.D. 644 (N.D. Tex. 1977) ..................................................6, 11

*Mullen v. Treasure Chest Casino, LLC*,
186 F.3d 620 (5th Cir. 1999) ..........................................................19

*Newman v. Stein*,
464 F.2d 689 (2d Cir. 1972)............................................................10

*Parker v. Anderson*,
667 F.2d 1204 (5th Cir. 1982) ........................................................11

*Phillips v. Joint Legislative Comm. on Performance & Expenditure Review of
State of Miss.*,
637 F.2d 1014 (5th Cir. 1981) ........................................................16

*Reed v. General Motors Corp.*,
703 F.2d 170 (5th Cir. 1983) ............................................................7

*Schwartz v. Harp*,
108 F.R.D. 279 (C.D. Cal. 1985) ....................................................14

*Schwartz v. TXU Corp.*,
Case No. 3: 02-CV-2243-K, 2005 WL 3148350 (N.D. Tex. Nov. 8, 2005)...............13, 20, 21

*Shaw v. Toshiba Am. Info. Sys., Inc.*,
91 F. Supp. 2d 942 (E.D. Tex. 2000) ..............................................18

*Shipes v. Trinity Indus.*,
987 F.2d 311 (5th Cir. 1993) ..........................................................16

*Strougo ex rel. Brazilian Equity Fund v. Bassini*,
258 F. Supp. 2d 254 (S.D.N.Y. 2003)..............................................12

*Turner v. Murphy Oil USA, Inc.*,
472 F. Supp. 2d 830 (E.D. La. 2007) ..............................................13

*Vaughn v. Am. Honda Motor Co.*,
  627 F. Supp. 2d 738 (E.D. Tex. 2007), *stay granted, order amended sub nom.*,
  *Vaughn v. Am. Honda Motor Co., Inc.*, 507 F.3d 295 (5th Cir. 2007) .............................21, 23

*W. Wash. Laborers-Employers Pension Trust v. Panera Bread Co.*,
  No. 4:08CV00120 ERW, 2011 WL 720060 (E.D. Mo. Feb. 22, 2011) ................................24

*West v. Circle K Stores, Inc.*,
  No. CIV. S-04-0438, 2006 WL 1652598 (E.D. Cal. June 13, 2006)........................................5

*Zeidman v. J. Ray McDermott & Co., Inc.*,
  651 F.2d 1030 (5th Cir. 1981) .............................................................................................14

## STATUTES, RULES & REGULATIONS

United States Code
  15 U.S.C.A. § 78u-4(a)(7) ..................................................................................................22
  15 U.S.C.A. § 78u-4(a)(7)(A)-(F)........................................................................................23

Federal Rules of Civil Procedure
  Fed. R. Civ. P. 23 ..........................................................................................13, 14, 19, 24
  Fed. R. Civ. P. 23(a) ...........................................................................................13, 16, 18
  Fed. R. Civ. P. 23(a)(1) .....................................................................................................14
  Fed. R. Civ. P. 23(a)(2) ................................................................................................15, 16
  Fed. R. Civ. P. 23(a)(4) .....................................................................................................17
  Fed. R. Civ. P. 23(e) ...........................................................................................................4
  Fed. R. Civ. P. 23(b) ....................................................................................................14, 18
  Fed. R. Civ. P. 23(b)(3)...........................................................................................18, 19, 21
  Fed. R. Civ. P. 23(c)(2).......................................................................................................21
  Fed. R. Civ. P. 23(c)(2)(B)..................................................................................................22
  Fed. R. Civ. P. 23(e) .................................................................................................6, 21, 22
  Fed. R. Civ. P. 23(g) ...........................................................................................................21
  Fed. R. Civ. P. 23(g)(1)(A)..................................................................................................21
  Fed. R. Civ. P. 26(f)..............................................................................................................3

## OTHER AUTHORITIES

Manual for Complex Litigation §30.41 (3d ed. 1995)....................................................................5

Plaintiff City of Omaha Police and Fire Retirement System ("Lead Plaintiff" or "Omaha Police and Fire") respectfully submits this unopposed motion for entry of the [Proposed] Order Preliminarily Approving Settlement and Providing for Notice ("Notice Order"): (i) granting preliminary approval to the proposed settlement set forth in the Stipulation of Settlement dated as of June 16, 2014 (the "Stipulation"); attached as Ex. 1 to the Clark-Weintraub Declaration, (ii) certifying the proposed Settlement Class;[1] (iii) approving the form and manner of giving notice of the proposed settlement to the Class; and (iv) setting a hearing date at which the Court will consider (a) final approval of the settlement and entry of the proposed Final Judgment and Order of Dismissal with Prejudice, (b) the Plan of Allocation of settlement proceeds, and (c) Lead Counsel's application for an award of attorneys' fees and expenses (the "Settlement Hearing").[2]

## I.   INTRODUCTION

The proposed settlement now before the Court for preliminary approval provides for the payment of seven million, eight hundred and fifty thousand dollars ($7,850,000) in cash (the "Settlement Fund"), plus interest earned thereon, for the benefit of the Class. The settlement is the result of extensive arm's-length negotiations between the parties, with the substantial assistance of the former United States District Court Judge Layn R. Phillips (W.D. Okla.).  As discussed in detail below, Lead Plaintiff and its counsel ("Lead Counsel") submit that the proposed settlement is in the best interests of the Class and clearly meets the standards for preliminary approval.

---

[1]      The "Class" is defined as all Persons who purchased or otherwise acquired LHC Group, Inc. ("LHC" or the "Company") common stock between July 30, 2008 and October 26, 2011, inclusive (the "Class Period").  Excluded from the Class are Defendants, directors, and officers of LHC and their families and affiliates.

[2]      Unless otherwise defined, all capitalized defined terms herein have the same meanings as set forth in the Stipulation.

## II.        FACTUAL AND PROCEDURAL HISTORY

On June 13, 2012, Omaha Police and Fire filed a class action complaint against LHC and its CEO Keith Myers (collectively "Defendants") alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("1934 Act"), as well as Securities and Exchange Commission ("SEC") Rule 10b-5, during the Class Period. Pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), counsel for Omaha Police and Fire published notice of the case, informing other class members of their right to file for appointment as lead plaintiff for the Class.  On August 13, 2012, Omaha Police and Fire moved for appointment as lead plaintiff and for its attorneys, Scott+Scott, Attorneys at Law, LLP ("Scott+Scott") and the Lemmon Law Firm L.L.C. ("Lemmon Law"), to be appointed lead counsel and liaison counsel, respectively.   On September 18, 2012, the Court granted this motion, and appointed Omaha Police and Fire to serve as Lead Plaintiff, and Scott+Scott and Lemmon Law to serve as lead and liaison counsel, respectively.   The Court also set a schedule for the filing of an amended complaint.

On November 2, 2012, the operative complaint (the "Amended Complaint") was filed.  ECF No. 30.  The Amended Complaint asserted claims under Sections 10(b), 20(a), and 20A of the 1934 Act and Rule 10b-5.  It was based on, among other things, a review and analysis of voluminous publicly available information concerning LHC and its business practices, including SEC filings, analyst reports, newspaper articles, and a Report of the U.S. Senate Finance Committee issued following an investigation into LHC's home health therapy practices, as well as the results of an investigation performed by a private investigator retained by Lead Counsel.   The private investigator's

investigation included interviews with many former LHC employees, four of whom were cited as Confidential Witnesses in the Amended Complaint.

On December 17, 2012, the Defendants moved to dismiss the Amended Complaint in its entirety.  Defendants' argued that the Amended Complaint: (i) did not allege a misrepresentation or omission of material fact; (ii) failed to allege a strong inference of scienter; (iii) failed to adequately plead loss causation; and (iv) only contained non-actionable allegations of mismanagement.   Lead Plaintiff filed its opposition to Defendants' dismissal motion on January 31, 2013, and Defendants filed their reply on March 4, 2013.

On March 15, 2013, the Court denied Defendants' dismissal motion in its entirety. Defendants' filed their answer to the Amended Complaint on April 15, 2013.  On April 12, 2013, Defendants filed a motion to amend the Court's order on the motion to dismiss to include certification for interlocutory appeal and for a stay of proceedings.  Lead Plaintiff filed a response in opposition to this motion on May 3, 2013, and Defendants replied on May 13, 2013.  The Court granted the motion to amend on May 23, 2013, thus allowing Defendants to seek interlocutory review.

Defendants filed their application for leave to appeal the Court's decision on the motion to dismiss on June 4, 2013, and Plaintiff filed its opposition to the application on June 17, 2013.  On July 18, 2013, the United States Court of Appeals for the Fifth Circuit Court denied Defendants' application.

Once the PSLRA discovery stay was lifted, the parties began to engage in discovery.  On August 14, 2013, the parties held a telephonic meet and confer pursuant to Fed. R. Civ. P. 26(f).  Thereafter, Lead Plaintiff propounded requests for production of

documents on the Defendants.  The parties then negotiated and executed a protocol regarding the production of electronically stored information.  Pursuant to Lead Plaintiff's requests for production, on October 7, 2013, Defendants produced over 136,000 pages of documents.  Lead Counsel reviewed each and every document produced by Defendants.

A telephonic scheduling conference took place on September 5, 2013 with counsel for all parties appearing.  Thereafter, the parties negotiated and executed a protective order regarding confidential information, which was submitted to the Court on September 26, 2013.  The Court entered the protective order on October 1, 2013.  On October 22, 2013, Magistrate Judge Hill held a status conference in chambers regarding the schedule for Lead Plaintiffs' class certification motion and hearing.

Subsequent to the status conference in chambers, the parties sought the assistance of a mediator to resolve the case and retained Judge Phillips (Ret.).  After preparing lengthy and detailed mediation statements and reply briefs, the mediation took place on March 7, 2014 in New York.  Although a settlement was not reached during the initial mediation session, the parties continued working with Judge Phillips (Ret.) to resolve the claims.  After a series of mediator's recommendations, on March 20, 2014, the parties reached an agreement-in-principle to settle the Litigation.  The parties then negotiated the Stipulation and supporting documents.  The Stipulation was executed on June 16, 2014.

## ARGUMENT

## III.   THE SETTLMENT MEETS THE CRITERIA NECESSARY FOR THIS COURT TO GRANT PRELIMINARY APPROVAL

Rule 23(e) of the Federal Rules of Civil Procedure provides that before a class action may be dismissed or compromised, notice of the proposed dismissal or

compromise must be given in the manner directed by the court, and judicial approval must be obtained.   The issue of whether a proposed settlement should be granted preliminary approval is a matter within the sound discretion of the district court, which should be exercised in the context of public policy strongly favoring the pretrial settlement of class action lawsuits.  *See, e.g.*, *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("Particularly in class action suits, there is an overriding public interest in favor of settlement.").[3]  There is a strong initial presumption that the compromise is fair and reasonable.  *Maher v. Zapata Corp.*, 714 F.2d 436, 455 n.31 (5th Cir. 1983) ("[N]either the district court nor the appellate court on review, should reach ultimate conclusions on the issues of fact and law underlying the dispute.").

Preliminary approval of a proposed settlement is the first step in a two-step process required before a class action may be settled.  *See McNamara v. Bre-X Minerals Ltd.*, 214 F.R.D. 424, 426 (E.D. Tex. 2002).[4]  "In considering preliminary approval, courts make a preliminary evaluation of the fairness of the settlement . . . ."  *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) (citing Manual for Complex Litigation §30.41 (3d ed. 1995)); *McNamara*, 214 F.R.D. at 427 n.2 ("purpose of preliminary approval is to detect *obvious* defects that will preclude final approval of the settlement . . .").[5] (emphasis in original) This initial assessment can be made on the basis of information already known to the Court, which, if necessary, may be supplemented by briefs, motions, or an informal presentation from the settling parties.

---

[3]     Unless otherwise indicated, all internal citations are omitted and emphasis is added.

[4]     Approval of a class action settlement normally proceeds in two stages:  preliminary approval followed by notice to the class, and then final approval.  *See, e.g.*, *West v. Circle K Stores, Inc.*, No. CIV. S-04-0438, 2006 WL 1652598, at *2 (E.D. Cal. June 13, 2006); *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079-80 (N.D. Cal. 2007).

[5]     Unless otherwise noted, all internal citations are omitted and emphasis is added.

*Id.*  "Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted."  *In re NASDAQ*, 176 F.R.D. at 102; *see also McNamara*, 214 F.R.D. at 430 ("[i]f the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies . . . and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing . . .").

Lead Plaintiff is now requesting the Court to take the first step in this process and grant preliminary approval of the proposed settlement.  Lead Counsel believe the settlement, which provides an immediate and substantial cash benefit to the Class – $7,850,000 – is an excellent result and clearly in the best interest of the Class.  Given the complexities of this Litigation and the substantial risks of continued litigation, Lead Counsel believe the settlement represents an outstanding resolution of this Litigation and eliminates the risk that the Class might not otherwise recover if action were to continue. While Lead Plaintiff is only seeking ***preliminary*** approval, reference to the six factors established by the Fifth Circuit Court of Appeals in granting ***final*** approval of class action settlements lends support to the proposition that the settlement is well within the range of possible approval.

### A.  The Proposed Settlement Is Fair and Reasonable Under the Fifth Circuit's Six-Pronged Test of Fairness

In evaluating a settlement, the "only question" for the Court to determine "is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval."  *McNary v. Am. Sav. & Loan Ass'n*, 76 F.R.D. 644, 649 (N.D. Tex. 1977).

6

The Fifth Circuit has established a six-pronged test to determine the fairness of proposed settlements: "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members."  *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983).  As demonstrated below, the settlement easily meets these six criteria.

### 1.      There Is No Fraud or Collusion Behind the Settlement

There is no collusion in the settlement of this action.  The settlement was reached only after a lengthy process involving in-person mediation before the Honorable Layn Phillips (Ret.), an experienced mediator and former federal court judge, followed by multiple mediator's recommendations.  Lead Counsel have many years of experience in litigating securities fraud class actions and have negotiated scores of other class settlements that have been approved by courts throughout the country.  Lead Counsel enjoys a well-deserved reputation for skill and success in the prosecution and favorable resolution of securities class actions and other complex civil matters.  Defendants are represented by Alston & Bird, a firm with a national reputation for the tenacious defense of class actions and other complex civil matters, as well as highly respected and experienced local counsel.  Very senior members of these firms negotiated the settlement, with the assistance of Judge Phillips.  Negotiations were hard-fought and the result of arm's-length negotiations between experienced counsel knowledgeable about the strengths and weaknesses of Lead Plaintiff's claims and the potential defenses thereto.

7

There can be no question that the parties were fairly and adequately represented in the course of these proceedings.  Accordingly, this factor supports preliminary approval of the settlement.  *See Faircloth v. Certified Fin. Inc.*, No. Civ.A. 99-3097, 2001 WL 527489, at *4 (E.D. La. May 16, 2001) ("there is typically an initial presumption that a proposed settlement is fair and reasonable when it is the result of arms length negotiations.").

### 2.      The Stage of the Proceedings and the Amount of Discovery Completed

This action has been actively litigated since its commencement on June 13, 2012 through the negotiation of the Stipulation.  Lead Counsel conducted a thorough investigation into the claims asserted in the highly detailed 59 page Amended Complaint, including interviews with numerous former employees of LHC and review and analysis of voluminous publicly available documents, briefed and prevailed on a motion to dismiss, defeated Defendants' attempts to secure interlocutory review, and were involved in discovery at the time of settlement.  Furthermore, Lead Counsel reviewed and analyzed approximately 136,000 pages of documents obtained from Defendants and consulted with experts on the issues of loss causation and damages.  Lead Counsel's investigation and the discovery obtained from Defendants related to the key factual issues at the core of the Litigation.  Thus, by the time settlement discussions began, Lead Counsel had a solid understanding of the strengths and weaknesses of Lead Plaintiff's claims, both legally and factually and were able to engage in a rigorous negotiation process with Defendants.  There can be no doubt that the parties reached the instant settlement with a "full understanding of the legal and factual issues surrounding this case." *Manchaca v. Chater*, 927 F. Supp. 962, 967 (E.D. Tex. 1996).

### 3.      The Probability of Success on the Merits

As in every complex case of this kind, Lead Plaintiff and the Class faced formidable obstacles to recovery at trial, both with respect to liability and damages. The claims in this litigation are for violations of Sections 10(b), 20(a) and 20A of the 1934 Act and Rule 10b-5.  Lead Plaintiff would, therefore, have the burden of proving, among other things: "(1) a material misrepresentation or omission by the defendant[s]; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation."  *Matrixx Initiatives, Inc. v. Siracusano*, 131 S. Ct. 1309, 1317 (2011).

### a.      Risks in Proving Liability

Although Lead Plaintiff believes that it would be successful and that the allegations of the Amended Complaint would ultimately be borne out by the evidence, it also recognizes that it faced significant hurdles to proving liability and damages at trial. Defendants have argued, and would have continued to argue, that liability was unwarranted because they made no false and/or misleading statements or omissions concerning LHC.  Defendants would also continue to contest scienter, claiming that any alleged statements made by Defendants were believed to be true at the time they were made.  Although Lead Plaintiff is confident that it would have been able to support its claims with qualified and persuasive expert testimony, jury reactions to competing experts are inherently difficult to predict, and Defendants would have presented highly experienced experts to support their various defenses to liability.

**b.**       **Risks in Proving Loss Causation and Damages**

Even if Plaintiffs were successful in establishing liability at trial, they would face substantial risks in proving loss causation and damages.  Lead Plaintiff has avoided this profound uncertainty through a settlement of $7,850,000 in cash.  Defendants would have argued that any losses suffered by Class Members on their investments were not attributable to the alleged public misstatements.  As with liability, issues relating to loss causation and damages would also have likely come down to an inherently unpredictable and hotly disputed "battle of the experts."  Accordingly, in the absence of a settlement, there was a very real risk that the Class would have recovered an amount significantly less than the total settlement amount – or even nothing at all.  Thus, the substantial payment of $7,850,000 by the Defendants, particularly when viewed in the context of the risks and the uncertainties involved in this litigation, clearly weighs heavily in favor of approving the Settlement.  *See  In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) (approving settlement where "it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad non-actionable factors such as general market conditions"); *Lewis v. Newman*, 59 F.R.D. 525, 528 (S.D.N.Y. 1973) ("stockholder litigation is notably difficult and notoriously uncertain.").

**4.**       **The Settlement Falls Within the Range of Reasonableness**

The determination of a "reasonable" settlement is not susceptible to a single mathematical equation yielding a particularized sum.  Rather, "in any case there is a range of reasonableness with respect to a settlement . . . ."  *Newman v. Stein*, 464 F.2d

689, 693 (2d Cir. 1972); *Fickinger v. C.I. Planning Corp.*, 646 F. Supp. 622, 630 (E.D. Pa. 1986). To assess the reasonableness of a proposed settlement seeking monetary relief, an inquiry "should contrast settlement rewards with likely rewards if case goes to trial." *In re Chicken, Antitrust Litig.*, 669 F.2d 228, 239 (5th Cir 1982). Thus, "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n.2 (2d Cir. 1974); *Parker v. Anderson*, 667 F.2d 1204, 1210 n.6 (5th Cir. 1982); *McNary*, 76 F.R.D. at 650.

Under the proposed settlement, the Class will receive $7,850,000 – a substantial amount – in exchange for the release of all claims against Defendants. Lead Plaintiff respectfully submits that considering the risks of continued litigation (*see*, §III.A.3, *supra*), and the time and expense that would be incurred to prosecute the action through trial and appeals (*see*, §III.A.5, *infra*), the settlement represents a significant recovery that clearly falls within the range of reasonableness.

## 5.     The Complexity, Expense, and Likely Duration of Litigation

Another reason for the Court to preliminarily approve the proposed settlement is the complexity, duration, and risks of further litigation. *See Manchaca*, 927 F. Supp. at 966. Here, there can be no doubt that continued litigation would require additional large expenditures of time and money and there would be a significant risk that the Class would obtain a result far less beneficial than the one provided by the settlement. For example, although Lead Counsel has already completed a substantial amount of document discovery, the complex issues involved in this Litigation would require further review of documents by Lead Counsel and their experts, significant motion practice, and

the taking and defending of numerous depositions.  Indeed, at the time settlement was reached, Lead Counsel was preparing for class certification.  This process would have involved substantial briefing, extensive and costly expert involvement, including deposition testimony by experts for both sides, and deposition testimony by the Lead Plaintiff.  It also would have involved substantial risk to the Class.  *See In re Seitel, Inc. Secs. Litig.*, 245 F.R.D. 263, 278 (S.D. Tex. June 26, 2007) (denying class certification based on a failure to demonstrate loss causation).

Additional risk and cost would have followed.  After the close of discovery, the parties would then brief summary judgment and prepare for trial.  The costs and risks associated with litigating this action to a verdict, not to mention through the inevitable appeals, would have been high, and the process would require hundreds of hours of this Court's time and resources.  *See Clark v. Lomas & Nettleton Fin. Corp.*, 79 F.R.D. 641, 651 (N.D. Tex. 1978), *vacated on other grounds,* 625 F. 2d 49 (5th Cir. 1980) (noting that the expense of trial can be "staggering," and carries with it the "distinct possibility" that the trial will result in no recovery").

Finally, if taken to trial, this Litigation would easily require an additional 1-2 years before a recovery, if any, was obtained for the Class.  *See Strougo ex rel. Brazilian Equity Fund v. Bassini*, 258 F. Supp. 2d 254, 258 (S.D.N.Y. 2003) ("'it is beyond cavil that continued litigation in this multi-district securities class action would be complex, lengthy, and expensive, with no guarantee of recovery by the class members'").  *A fortiori*, this factor supports preliminary approval of the settlement.

6.     **The Opinions of Class Counsel, the Class Representative, and Absent Class Members**

"Counsel are the Court's 'main source of information about the settlement' . . . and therefore the Court will give weight to class counsel's opinion regarding the fairness of settlement." *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 852 (E.D. La. 2007).   "[W]here the parties have conducted an extensive investigation, engaged in significant fact-finding and Lead Counsel is experienced in class-action litigation, courts typically 'defer to the judgment of experienced trial counsel who has evaluated the strength of his case.'" *Schwartz v. TXU Corp.*, Case No. 3: 02-CV-2243-K, 2005 WL 3148350, at *21 (N.D. Tex. Nov. 8, 2005).

Here, Lead Counsel has considerable experience in complex class action and securities litigation and believes the settlement merits approval.  Lead Plaintiff also supports the proposed settlement.[6]  Accordingly, this factor weighs in favor of preliminary approval.

For all of the foregoing reasons, Lead Plaintiff respectfully submits that the proposed settlement falls within the range of what could be found to be fair, reasonable, and adequate and warrants this Court's preliminary approval.

## IV.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

One of the Court's functions in reviewing a proposed settlement of a class action is to determine whether the action may be maintained as a class action under Fed. R. Civ. P. 23.  *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 619-621 (1997).  Rule 23(a)

---

[6]     Class Members have not yet had the opportunity to review the terms of the settlement.  Therefore, Lead Counsel will advise the Court of the Class Members' reaction to the settlement following completion of the notice process, as part of the analysis presented in support of final approval of the settlement.

13

establishes four prerequisites to class certification: (i) "numerosity," (ii) "commonality," (iii) "typicality," and (iv) "adequacy" of representation.  *See id.* at 613.  In addition, the Class must meet one of the three requirements of Rule 23(b).  *See* Fed. R. Civ. P. 23.

Courts have generally found securities claims to be particularly well-suited for class action status because they allow for the policies behind the securities laws to be enforced in circumstances where there are numerous investors with small individual claims that otherwise would effectively be barred from litigation.  *See Blackie v. Barrack,* 524 F.2d 891, 899 (9th Cir. 1975); *In re Enron Corp. Sec. & ERISA Litig.,* No. H-01-3624, 2003 WL 22494413, at *2 (S.D. Tex. July 24, 2003) (preliminarily approving settlement and conditionally certifying class for settlement purposes).  This action is no exception and, as explained below, the settlement class satisfies each of the requirements set forth above.

### A.      The Putative Class Is Sufficiently Numerous

The first element of the four-part threshold for class certification requires that "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  In determining numerosity, the exact size of the Class need not be known so long as general knowledge and common sense indicate that the class is large,[7] and numerosity is "generally assumed to have been met in class action suits involving nationally traded securities." *Zeidman v. J. Ray McDermott & Co., Inc.,* 651 F.2d 1030, 1039 (5th Cir. 1981).

During the Class Period, LHC had more than 18 million shares of common stock issued and outstanding.  This stock was actively traded on the NASDAQ, and Lead Plaintiff believes that beneficial holders of LHC common stock number in the hundreds

---

[7]        *See Schwartz v. Harp,* 108 F.R.D. 279, 281-282 (C.D. Cal. 1985).

or thousands and are geographically located throughout the United States, making joinder of all Class Members impracticable.  *In re Reliant Sec. Litig.*, No. H-02-1810, 2005 U.S. Dist. LEXIS 9716, at *18-19 (S.D. Tex. Feb. 18, 2005) (finding numerosity where approximately 60 million nationally traded shares were at issue and there were "thousands of geographically dispersed members of the Class"); *In re NeoPharm, Inc. Sec. Litig.*, 225 F.R.D. 563, 565 (N.D. Ill. 2004) (certifying class where the company had more than 16 million shares being traded on NASDAQ such that it could be "reasonably inferred that hundreds, if not thousands, of persons would be included in the proposed class").  The numerosity requirement is, therefore, easily met.

### B.      Common Questions of Law or Fact Exist

Rule 23(a)(2) is satisfied where there are "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Commonality does not require a showing that the interests and claims of the class members are identical; it requires only that "there is at least one issue whose resolution will affect all or a significant number of the putative class members."  *Forbush v. J.C. Penney Co., Inc.*, 994 F.2d 1101, 1106 (5th Cir. 1993) *abrogated on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011).

Here, questions which are common to the proposed Class include: (a) whether the 1934 Act was violated by Defendants; (b) whether Defendants omitted and/or misrepresented material facts; (c) whether Defendants knew or recklessly disregarded that their statements were false and misleading; (d)  whether the prices of LHC securities were artificially inflated; and (e) the extent of damage sustained by Class members and the appropriate measure of damages.  Securities fraud actions containing common questions such as these have repeatedly been held to be prime candidates for class

certification.  *See In re Elec. Data Sys. Corp. Secs. Litig.*, 226 F.R.D. 559, 564 (E.D. Tex. 2005), *aff'd*, 429 F.3d 125 (5th Cir. 2005); *In re FirstPlus Fin. Group, Inc., Sec. Litig.*, No. 3:98-CV-2551-M, 2002 WL 31415951, at *4 (N.D. Tex. Oct. 23, 2002).  In short, because the core complaint of all Class members is that they purchased or acquired LHC common stock at artificially inflated prices, the commonality requirement of Rule 23(a)(2) is satisfied.  *See In re Wireless Facilities, Inc. Sec. Litig.*, 253 F.R.D. 630, 635 (S.D. Cal. 2008) (finding "core issue" in a securities litigation to be plaintiffs' acquisition of defendant's securities at artificially inflated prices).

### C.   Lead Plaintiff's Claims are Typical of Those of the Class

The typicality requirement is satisfied where, as here, "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992).  Typicality does not require that the interests of the named representatives and the class members be identical.  *See Phillips v. Joint Legislative Comm. on Performance & Expenditure Review of State of Miss.*, 637 F.2d 1014, 1024 (5th Cir. 1981); *Elec. Data Sys. Corp.*, 226 F.R.D. at 565 ("[f]actual differences do not defeat typicality if the claims arise from a similar course of conduct and share the same legal theories").

Here, Lead Plaintiff's claims arise from the same course of conduct by the Defendants and are predicated on the same legal theories as the claims of all other Class Members.  The typicality requirement of Rule 23(a) is, therefore, met.  *See Durrett v. John Deere Co.*, 150 F.R.D. 555, 558 (N.D. Tex. 1993); *see also Shipes v. Trinity Indus.*,

16

987 F.2d 311, 316 (5th Cir. 1993) (test for typicality, like commonality, is not demanding).

### D.      Lead Plaintiff is a More Than Adequate Representative of the Class

The adequacy requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem*, 521 U.S. 625.  The factors relevant to a determination of adequacy are: (1) the absence of potential conflict between the named plaintiff and the class members; and (2) that counsel chosen by the representative parties is qualified, experienced, and able to vigorously conduct the proposed litigation.  *Drexel*, 960 F.2d at 291; *Longden v. Sunderman*, 123 F.R.D. 547, 557 (N.D. Tex. 1988).

Here, as described above, Lead Plaintiff – the proposed Class Representative – has claims which are typical of and coextensive with those of the Class.  Lead Plaintiff, like all Class members, purchased or otherwise acquired the common stock of LHC at artificially inflated prices during the Class Period as a result of Defendants' alleged materially false and misleading statements, and was allegedly damaged thereby.  There is, therefore, no conflict between Lead Plaintiff and the Class it seeks to represent.

Furthermore, Lead Plaintiff has retained Scott+Scott to serve as Lead Counsel in this Litigation.  Scott+Scott is highly experienced in securities class action litigation and has successfully prosecuted many securities and other complex class actions in courts throughout the United States.  *See* ECF No. 13-6. (Scott+Scott firm resume).

Since Lead Plaintiff is an adequate representative of the Class, and its counsel are qualified, experienced, and capable of prosecuting this Litigation, the requirements of Rule 23(a)(4) are satisfied.

E.      The Requirements of Rule 23(b)(3) Are Satisfied

In addition to satisfying all of the criteria of Rule 23(a), a party seeking class certification must also satisfy one of the requirements of Rule 23(b).  Certification of a class under Rule 23(b)(3) requires that: (1) common issues predominate over individual issues; and (2) the class action mechanism is superior to other methods of adjudicating the controversy.  Fed. R. Civ. P. 23(b)(3).

1.      Common Legal and Factual Questions Predominate in the Litigation

Predominance exists where, as here, Defendants are "alleged to have acted wrongfully in the same basic manner towards an entire class."  *Eatmon v. Palisades Collection, LLC*, No. 08-CV-306-DF-CE, 2010 WL 1189571, at *8 (E.D. Tex. Mar. 5, 2010).  "Efficiency is the traditional focus of the predominance test" and "[w]here significant common issues can be resolved for all claimants in a single adjudication, the advantage of a class-wide proceeding is obvious."  *Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 955 (E.D. Tex. 2000).  The predominance requirement is, therefore, "readily met in certain cases alleging consumer or **securities fraud** or violations of the antitrust laws." *Amchem*, 521 U.S. at 625.

Here, the same set of operative facts and the issues of falsity, materiality, scienter, and causation are common to all Class members and clearly predominate over any individual issues.  Each Class member purchased LHC common stock during the Class Period at prices that were allegedly artificially inflated as a result of Defendants' misrepresentations and omissions in violation of sections 10(b) and 20(a) of the 1934 Act and Rule 10b-5, and each was harmed when the truth was revealed.  The commonality on these issues, which are central to Defendants' liability, is sufficient to meet the

18

predominance test.  *See Longden*, 123 F.R.D. at 553 ("Courts faced with similar fact situations as the case at bar have held that where the complaint alleges a scheme or common course of misconduct against a large class of purchasers allegedly defrauded over a period of time by similar misrepresentations, class certification is appropriate, regardless of the existence of some differences in class members' positions.").[8]

### 2.     The Class Action Is Superior To Other Methods Of Adjudication

In determining whether the "superiority" requirement of Rule 23(b)(3) is satisfied, the court must consider: (i) the interests of class members in individually controlling the litigation of their own cases; (ii) the extent and nature of other litigation involving the same issues; (iii) the desirability of concentrating the litigation in this forum; and (iv) any difficulties that may be encountered in managing a class action.  Fed. R. Civ. P. 23(b)(3).

The first factor addresses class members' interests in prosecuting their own cases. This factor "matters mainly when absent class members have personal injury claims." *Lehocky v. Tidel Techs., Inc.*, 220 F.R.D. 491, 510 (S.D. Tex. 2004).   "When only economic losses are at issue, the interest to personally control the litigation is small.  As long as the named plaintiffs seek to maximize the recovery for the class, little else matters."  *Id.*  And, "[a]lthough such desires are pertinent to the analysis, they should be subordinated to the advantages of having a defendant's liability determined in one proceeding when virtually all legal and factual issues are common to the class members." *Durrett*, 150 F.R.D. at 559.  Here, as discussed *supra*, the Lead Plaintiff is plainly interested in maximizing the Class recovery, and the Defendants will certainly benefit

---

[8]      *See also* Fed. R. Civ. P. 23, advisory committee note to 1966 Amendment ("a fraud perpetrated on numerous persons by the use of similar misrepresentations" should be appropriate for class action treatment if liability is found); *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 626 (5th Cir. 1999); *In re Sys. Software Assocs., Inc. Sec. Litig.*, No. 97 C 177, 2000 WL 1810085, at *4 (N.D. Ill. Dec. 8, 2000).

from resolving all litigation in one proceeding.  Finally, because the proposed settlement allows class members to opt out, those investors who still wish to pursue individual litigation remain free to do so.

The second factor relates to the pendency of other litigation.  Other than two derivative cases that are not being settled as part of this settlement, the parties are aware of no other litigation relating to the issues addressed in this case.   Moreover, "a class action might prevent the initiation of further litigation if class members who have not filed suit could have their rights adequately determined by a representative in a class action." *Id*. at 559-60.  Accordingly, this factor weighs in favor of class certification. *See Lehocky*, 220 F.R.D. at 510.

As for the third factor, desirability of concentrating litigation in this forum, Lead Plaintiff has shown a desire to focus the litigation in this Court by filing the first action in the Western District of Louisiana.  There have been no other cases filed by Class members in other jurisdictions, and the Company is located in this district.  Furthermore, the Court is familiar with the facts and legal issues of the case, having ruled on the motion to dismiss and other matters.  The third factor, therefore, supports certification of a settlement class.  *See id*.

Finally, courts certifying settlement classes do not need to consider the fourth factor, which focuses on the manageability of a class action.  As the Supreme Court noted in *Amchem*, when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems for the proposal is that there be no trial."  521 U.S. at 620; *see also Schwartz*, 2005 WL 3148350, at *16.

20

**F.     The Court Should Appoint Lead And Liaison Counsel As Counsel For The Class**

A court that certifies a class must also appoint class counsel.  *See* Fed. R. Civ. P. 23(g).  The Rule directs the Court to consider: "(1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class."  Fed. R. Civ. P. 23(g)(1)(A).

Scott+Scott and Lemmon Law, which, pursuant to this Court's September 18, 2012 Order (ECF No. 29) were appointed as Lead Counsel and Liaison Counsel, respectively, have done considerable work identifying and investigating potential claims in this matter – as evidenced by the fact that they filed the first and only complaint in the Litigation.  They have also devoted substantial time and effort to the prosecution of this Litigation, demonstrated their knowledge of the applicable law by prevailing on the motion to dismiss, and committed the resources necessary to tenaciously prosecute the action.  Accordingly, Lead Plaintiff respectfully requests that the Court appoint these firms to continue representing the Class.

**V.     THE PROPOSED FORM AND METHOD OF NOTICE TO THE CLASS IS APPROPRIATE**

In connection with a settlement class maintained under Rule 23(b)(3), class notice must meet the requirements of both Rule 23(c)(2) and Rule 23(e).   *See Vaughn v. Am. Honda Motor Co*., 627 F. Supp. 2d 738, 744 (E.D. Tex. 2007), *stay granted, order amended sub nom.*, *Vaughn v. Am. Honda Motor Co., Inc.*, 507 F.3d 295 (5th Cir. 2007); *Schwartz*, 2005 WL 3148350, at *10.   Rule 23(c)(2) requires "the best notice that is

practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Rule 23(e) is less specific, requiring only that notice of the proposed settlement be given "in a reasonable manner to all class members who would be bound by the proposal."

As detailed in the proposed Preliminary Approval Order, Lead Counsel and the Claims Administrator propose to mail copies of the Notice of Proposed Settlement of Class Action (the "Notice") and Proof of Claim and Release ("Proof of Claim") form substantially in the forms attached to the Stipulation as Exhibits A-1 and A-2, respectively, by first class mail, to all identifiable members of the Class, at their last known address appearing in the transfer records maintained by or on behalf of LHC. Copies of the Notice and Proof of Claim (collectively, "Notice Packet") will also be mailed to the largest banks and brokerage houses requesting that the Notice Packet be sent to all persons and entities for whom they act as nominee purchasers.  In addition, Lead Counsel will cause the Summary Notice, substantially in the form attached to the Stipulation as Exhibit A-3, to be published once in the national edition of *Investor's Business Daily* and once over the *PR Newswire* shortly after mailing of the Notice.

With respect to content, the notice must contain the information outlined in Rule 23(c)(2)(B) and the additional information required by the PSLRA.  *See* 15 U.S.C.A. §78u-4(a)(7).  The proposed Notice satisfies these requirements and will provide Class members with the information necessary for them to make a decision whether to remain in, opt-out, or object to the settlement.  *See In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977) (notice must contain "information that a reasonable person would consider to be material in making an informed, intelligent decision of

whether to opt out or remain a member of the class and be bound by the final judgment."); *Vaughn*, 627 F. Supp. 2d at 744; *In re Shell Oil Refinery*, 155 F.R.D 552, 558 (E.D. La. 1993).  It describes:  (i) the nature, history, and status of the Litigation; (ii) the Settlement; (iii) the definition of the Class; (iv) how to opt out; (v) the process by which class members may enter an appearance through their own counsel; (vi) the binding effect of the settlement approval proceedings; (vii) the proposed plan of distribution; and (viii) the reasons the parties are proposing the Settlement.  It also supplies the date, time, and place of the Fairness Hearing, and the procedures for commenting on the Settlement and appearing at the hearing.

As required by the PSLRA, the notice includes the following information: (i) the amount of the settlement proposed to be distributed to the parties to the action, determined in the aggregate and on an average per-share basis; (ii) if the parties do not agree on the average amount of damages per share that would be recoverable in the event Plaintiff prevailed, a statement from each settling party concerning the issue(s) on which the parties disagree; (iii) a statement indicating which parties or counsel intend to make an application for an award of attorneys' fees and costs (including the amount of such fees and costs determined on an average per-share basis), and a brief explanation supporting the fees and costs sought; (iv) the name, telephone number, and address of one or more representatives of counsel for the Plaintiff class who will be reasonably available to answer questions concerning any matter contained in the notice of settlement published or otherwise disseminated to the Class; (v) a brief statement explaining the reasons why the parties are proposing the settlement; and (vi) such other information as may be required by the Court.  *See* 15 U.S.C.A. §78u-4(a)(7)(A)-(F).

23

The proposed notice program fulfills the requirements of due process because it alerts and informs those members of the Class who can be identified through reasonable efforts of all of the information set forth above.  Further, the Summary Notice provides an abbreviated but informative description of the Litigation and the proposed settlement, and also explains how to obtain the more detailed Notice.  Courts routinely find that comparable notice programs meet the requirements of due process and Rule 23. *See In re Enron Corp. Sec. & ERISA Litig.*, Civ. No. H-01-3624, 2003 WL 22494413, at *3 (S.D. Tex. July 24, 2003); *In re OCA, Inc. Sec. & Deriv. Litig.*, CIV A 05-2165, 2008 WL 4681369, at *14-16 (E.D. La. Oct. 17, 2008); *W. Wash. Laborers-Employers Pension Trust v. Panera Bread Co.*, No. 4:08CV00120 ERW, 2011 WL 720060, at *2-3 (E.D. Mo. Feb. 22, 2011).

## VI.   PROPOSED SCHEDULE

If the Court grants preliminary approval to the proposed Settlement, the parties respectfully submit the following procedural schedule for the Court's consideration.  The proposed Notice Order includes blank dates that must be established by the Court to properly effectuate the Settlement.   In this regard, the parties present the following general schedule of events to the Court:

| EVENT | DATE FORMULA | REFERENCED IN DOCUMENTS |
|---|---|---|
| Notice Order Entered | Day 1 | 3.1 of Stipulation |
| Plaintiff mails Notice Packet and posts on website ("Notice Date") | 31 | 8(a) and 8(c) of Notice Order |
| Plaintiff publishes Summary Notice | 40 | 8(b) of Notice Order |
| Plaintiff files proof of mailing and publishing notice | 53 | 8(d) of Notice Order |
| Plaintiff files Motion for Final Approval and Motion for Award of Attorneys' Fees | 76 | 18 of Notice Order |
| Objections received by counsel and filed with Court | 90 | 16 of Notice Order |
| Opt-outs from settlement class members post marked | 90 | 14 of Notice Order |

| Plaintiff's Counsel gives opt-outs to Defense Counsel | 106 | 10 of Notice Order |
| Replies re: Final Approval and Attorneys' Fees | 113 | 18 of Notice Order |
| Claims forms post marked | 90 | 12 of Notice Order |
| Settlement Hearing | 120 | 2 of Notice Order |

If this schedule is not convenient for the Court, Lead Plaintiff respectfully requests that the Court use at least the same or greater intervals between each event listed in the proposed schedule to provide all parties sufficient time to comply with the proposed Notice Order.

## VII.   CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests the Court grant the Motion.

Date: June 17, 2014

Respectfully submitted,
**LEMMON LAW FIRM, LLC**

*/s/ Andrew A. Lemmon*
ANDREW A. LEMMON (#18302)
15058 River Road
PO Box 904
Hahnville, LA 70057
Telephone:   (985) 783-6789
Facsimile:   (985) 783-1333
Email:  Andrew@lemmonlawfirm.com

DAVID R. SCOTT
**SCOTT+SCOTT, ATTORNEYS AT LAW, LLP**
156 South Main Street
P.O. Box 192
Colchester, CT  06415
Telephone:   (860) 537-5537
Facsimile:   (860) 537-4432
Email:  david.scott@scott-scott.com

25

DEBORAH CLARK-WEINTRAUB
JOSEPH P. GUGLIELMO
**SCOTT+SCOTT, ATTORNEYS AT
LAW, LLP**
The Chrysler Building
405 Lexington Ave., 40th Floor
New York, NY 10174
Telephone:   (212) 223-6444
Facsimile:   (212) 223-6334
Email:  dweintraub@scott-scott.com
          jguglielmo@scott-scott.com

ANNE L. BOX
JOHN T. JASNOCH
**SCOTT+SCOTT, ATTORNEYS AT
LAW, LLP**
707 Broadway, Suite 1000
San Diego, California 92101
Telephone:   (619) 233-4565
Facsimile:   (619) 233-0508
Email:  abox@scott-scott.com
          jjasnoch@scott-scott.com

*Attorneys for Plaintiff City of Omaha Police
and Fire Retirement System*

26