**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | |
|---|---|
| CITY OF OMAHA POLICE AND FIRE RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>- against-<br><br>LHC GROUP, INC. AND KEITH G. MYERS,<br><br>Defendants. | **Case No. 6:12-CV-01609-JTT-CMH**<br><br><br>**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION** |

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................ 1

II.     STATEMENT OF FACTS AND PROCEDURAL HISTORY............................ 2

III.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND
        ADEQUATE................................................................................... 2

        A.      The Settlement Is Entitled to a Presumption of Fairness ........................... 3

        B.      There Is No Fraud or Collusion Behind the Settlement............................. 5

        C.      The Stage of the Proceedings and the Amount of
                Discovery Completed.................................................................... 5

        D.      The Probability of Success on the Merits ................................................. 6

                1.      Risks in Proving Liability ............................................................. 6

                2.      Risk in Proving Damages.............................................................. 7

        E.      The Settlement Falls Within the Range of Reasonableness...................... 9

        F.      The Complexity, Expense, and Likely Duration of Litigation ................ 10

        G.      The Opinions of Class Counsel, the Class Representative,
                and Absent Class Members........................................................ 11

IV.     THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS ................... 12

        A.      The Putative Class Is Sufficiently Numerous ........................................... 13

        B.      Common Questions of Law or Fact Exist................................................. 13

        C.      Lead Plaintiff's Claims Are Typical of Those of the Class.................... 14

        D.      Lead Plaintiff Is a More Than Adequate Representative of the Class...... 15

        E.      The Requirements of Rule 23(b)(3) Are Satisfied.................................. 16

                1.      Common Legal and Factual Questions Predominate in the
                        Litigation.............................................................................. 16

                2.      The Class Action Is Superior to Other Methods
                        of Adjudication ..................................................................... 17

        F.      The Court Should Appoint Lead and Liaison Counsel as
                Counsel for the Class ................................................................ 18

V.      THE NOTICE PROVIDED MEETS THE REQUIREMENTS OF
        RULE 23 AND SATISFIES DUE PROCESS ...................................... 19

VI.     THE PLAN OF ALLOCATION IS FAIR, REASONABLE,
        AND ADEQUATE....................................................................... 20

VII.    CONCLUSION.............................................................................. 21

i

# TABLE OF AUTHORITIES

Page(s)

CASES

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
   572 F.3d 221 (5th Cir. 2009) ...................................................................................7

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)..................................................................................12, 15, 16, 18

*Beecher v. Able*,
   575 F.2d 1010 (2d Cir. 1978).................................................................................20

*Blackie v. Barrack*,
   524 F.2d 891 (9th Cir. 1975) ................................................................................12

*by Goldberger v. Integrated Resources, Inc.*,
   209 F.3d 43 (2d Cir. 2000)......................................................................................9

*by Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011)...........................................................................................14

*Carson v. Am. Brands, Inc.*,
   450 U.S. 79 (1981)...................................................................................................3

*Clark v. Lomas & Nettleton Fin. Corp.*,
   79 F.R.D. 641 (N.D. Tex. 1978), *vacated on other grounds,* 625 F. 2d 49 (5th
   Cir. 1980) ..............................................................................................................10

*Cotton v. Hinton*,
   559 F.2d 1326 (5th Cir. 1977) ............................................................................4, 5

*Crystian v. Tower Loan of Mississippi Inc.*
   125 S. Ct. 972 (2005)...............................................................................................3

*DeHoyos v. Allstate Corp.*,
   240 F.R.D. 269 (W.D. Tex. 2007) .........................................................................5

*Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974)....................................................................................9

*Durrett v. John Deere Co.*,
   150 F.R.D. 555 (N.D. Tex. 1993) .........................................................15, 17, 18

*Eatmon v. Palisades Collection, LLC*,
   No. 2:08-CV-306-DF-CE, 2010 WL 1189571 (E.D. Tex. Mar. 5, 2010) ........13, 16

*Faircloth v. Certified Fin. Inc.*,
    Case No. 99-3097, 2001 WL 527489 (E.D. La. May 16, 2001)...............................................5

*Fickinger v. C.I. Planning Corp.*,
    646 F. Supp. 622 (E.D. Pa. 1986) ..........................................................................................9

*Forbush v. J.C. Penney Co., Inc.*,
    994 F.2d 1101 (5th Cir. 1993) ...............................................................................................13

*Goldberger v. Integrated Resources, Inc.*,
    209 F.3d 43 (2d Cir. 2000)......................................................................................................9

*Halliburton Co. v. Erica P. John Fund, Inc.*,
    131 S. Ct. 2398 (2014)...........................................................................................................10

*In re Am. Bank Note Holographics, Inc., Sec. Litig.*,
    127 F. Supp. 2d 418 (S.D.N.Y. 2001)...................................................................................20

*In re Chicken Antitrust Litig.*,
    669 F.2d 228 (5th Cir 1982) ..............................................................................................9, 20

*In re Drexel Burnham Lambert Group, Inc.*,
    960 F.2d 285 (2d Cir. 1992)...................................................................................................15

*In re Elec. Data Sys. Corp. Secs. Litig.*,
    226 F.R.D. 559 (E.D. Tex. 2005), *aff'd*, 429 F.3d 125 (5th Cir. 2005)..................................14

*In re Enron Corp. Sec. & ERISA Litig.*,
    No. H-01-3624, 2003 WL 22494413 (S.D. Tex. July 24, 2003) .......................................12, 20

*In re FirstPlus Fin. Group, Inc., Sec. Litig.*,
    No. 3:98-CV-2551-M, 2002 WL 31415951 (N.D. Tex. Oct. 28, 2002)..................................14

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ..........................................................................................21

*In re Lease Oil Antitrust Litig. (No. II)*,
    186 F.R.D. 403 (S.D. Tex. 1999)..........................................................................................10

*In re NeoPharm, Inc. Sec. Litig.*,
    225 F.R.D. 563 (N.D. Ill. 2004).............................................................................................13

*In re OCA, Inc. Sec. & Deriv. Litig.*,
    CIV A 05-2165, 2008 WL 4681369 (E.D. La. Oct. 17, 2008) ...............................................20

*In re OCA, Inc. Sec. & Derivative Litig.*,
    Civil Action No. 05-2165, 2009 WL 512081 (E.D. La. Mar. 2, 2009) ...................................11

*In re Rent-Way Sec. Litig.*,
    305 F. Supp. 2d 491 (W.D. Pa. 2003) ....................................................................8

*In re Seitel, Inc. Secs. Litig.*,
    245 F.R.D. 263 (S.D. Tex. 2007) .........................................................................10

*In re Sprint Corp. ERISA Litig.*,
    443 F. Supp. 2d 1249 (D. Kan. 2006) ..................................................................21

*In re Symbol Techs. Class Action Litig.*,
    950 F. Supp. 1237 (E.D.N.Y. 1997) ......................................................................7

*In re Sys. Software Assocs., Inc. Sec. Litig.*,
    No. 97 C 177, 2000 WL 1810085 (N.D. Ill. Dec. 8, 2000) ..................................17

*In re UBS Auction Rate Sec. Litig.*,
    No. 08 Civ. 2967, 2008 WL 2796592 (S.D.N.Y. July 16, 2008) ..........................11

*In re Warner Commc'ns Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985), aff'd, 798 F.2d 35 (2d Cir. 1986) ...................8

*In re Wireless Facilities, Inc. Sec. Litig.*,
    253 F.R.D. 630 (S.D. Cal. 2008) .........................................................................14

*In re Zonagen, Inc. Sec. Litig.*,
    322 F. Supp. 2d 764 (S.D. Tex. 2003) ...................................................................8

*Ind. Elec. Workers' Pension Trust Fund IBEW v. Shaw Grp., Inc.*,
    537 F.3d 527 (5th Cir. 2008) .................................................................................7

*James v. City of Dallas*,
    254 F.3d 551 (5th Cir. 2001) ...............................................................................14

*Keasler v. Natural Gas Pipeline Co. of Am.*,
    84 F.R.D. 364 (E.D. Tex. 1979)...........................................................................12

*Lehocky v. Tidel Techs., Inc.*,
    220 F.R.D. 491 (S.D. Tex. 2004).....................................................................17, 18

*Lelsz v. Kavanagh*,
    783 F. Supp. 286 (N.D. Tex. 1991) .......................................................................4

*Longden v. Sunderman*,
    123 F.R.D. 547 (N.D. Tex. 1988) ...................................................................15, 17

*Manchaca v. Chater*,
    927 F. Supp. 962 (E.D. Tex. 1996).....................................................................6, 10

iv

*Matrixx Initiatives, Inc. v. Siracusano,*
    131 S. Ct. 1309 (2011) ............................................................................6

*McNary v. Am. Sav. and Loan Ass'n,*
    76 F.R.D. 644 (N.D. Tex. 1977) ............................................................9

*Mullen v. Treasure Chest Casino, LLC,*
    186 F.3d 620 (5th Cir. 1999) ..........................................................13, 17

*Murillo v. Tex. A&M Univ. Sys.,*
    921 F. Supp. 443 (S.D. Tex. 1996) .......................................................3

*Nat'l Rural Telecommc'ns Coop. v. DIRECTV, Inc.,*
    221 F.R.D. 523 (C.D. Cal. 2004) ..........................................................2

*Newby v. Enron Corp.,*
    394 F.3d 296 (5th Cir. 2004) .................................................................3

*Newman v. Stein,*
    464 F.2d 689 (2d Cir. 1972) (Friendly, J.) ...........................................9

*Parker v. Anderson,*
    667 F.2d 1204 (5th Cir.), cert denied, 459 U.S. 828 (1982) ............3, 9

*Phillips v. Joint Legislative Comm. on Performance & Expenditure Review of*
    *State of Miss.,*
    637 F.2d 1014 (5th Cir. 1981) ............................................................14

*Reed v. General Motors Corp.,*
    703 F.2d 170 (5th Cir. 1983) .................................................................3

*Rubenstein v. Collins,*
    162 F.R.D. 534 (S.D. Tex. 1995) ........................................................13

*Schwartz v. Harp,*
    108 F.R.D. 279 (C.D. Cal. 1985) .......................................................13

*Schwartz v. TXU Corp.,*
    Case No. 3: 02-CV-2243-K, 2005 WL 3148350 (N.D. Tex. Nov. 8, 2005)..................8, 11, 18

*Shaw v. Toshiba Am. Info. Sys., Inc.,*
    91 F. Supp. 2d 942 (E.D. Tex. 2000) .................................................16

*Shipes v. Trinity Indus.,*
    987 F.2d 311 (5th Cir. 1993) ...............................................................15

*Smith v. Crystian,*
    91 Fed. Appx. 952 (5th Cir. 2004)........................................................3

*Stoetzner v. U.S. Steel Corp.*,
  897 F.2d 115 (3d Cir. 1990)......................................................................................2

*Streber v. Hunter*,
  221 F.3d 701 (5th Cir. 2000) ...................................................................................8

*Strougo ex rel. Brazilian Equity Fund v. Bassini*,
  258 F. Supp. 2d 254 (S.D.N.Y. 2003)....................................................................11

*Turner v. Murphy Oil USA, Inc.*,
  472 F. Supp. 2d 830 (E.D. La. 2007) ..............................................................9, 11

*U. S. v. Texas Education Agency*,
  679 F.2d 1104 (5th Cir. 1982) ............................................................................3, 4

*W. Wash. Laborers-Employers Pension Trust v. Panera Bread Co.*,
  No. 4:08CV00120 ERW, 2011 WL 720060 (E.D. Mo. Feb. 22, 2011) ................20

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011)...........................................................................................14

*White v. NFL*,
  822 F. Supp. 1389 (D. Minn. 1993), aff'd, 41 F.3d 402 (8th Cir. 1994)................20

*Zeidman v. J. Ray McDermott & Co., Inc.*,
  651 F.2d 1030 (5th Cir. 1981) ...............................................................................13

STATUTES, RULES AND REGULATIONS

  Federal Rules of Civil Procedure
    Rule 23 .......................................................................................................12, 17, 20
    Rule 23(a).....................................................................................................12, 15, 16
    Rule 23(a)(1).......................................................................................................13
    Rule 23(a)(2).................................................................................................13, 14
    Rule 23(a)(4).......................................................................................................16
    Rule 23(b) ...........................................................................................................12, 16
    Rule 23(b)(3).............................................................................................12, 16, 17
    Rule 23(e)..............................................................................................................1
    Rule 23(g) ...........................................................................................................18
    Rule 23(g)(1)(A) .................................................................................................18
    Rule 26....................................................................................................................4

OTHER AUTHORITIES

MANUAL FOR COMPLEX LITIGATION §30.41 (2d Fed. 1985) .........................................4

## I.      INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 23(e) and this Court's August 1, 2014 Order granting preliminary approval of the settlement of this class action (the "Preliminary Approval Order"), Lead Plaintiff City of Omaha Police and Fire Retirement System ("Lead Plaintiff"), by and through its counsel, respectfully submits this memorandum of law in support of certification of the Class, and final approval of the proposed settlement (the "Settlement")[1] and the Plan of Allocation of the Settlement proceeds ("Plan of Allocation").  Lead Counsel believes that the recovery of $7,850,000 in cash, plus interest, is an excellent result for the Class and merits the approval of the Court.  The Settlement resolves all claims asserted by Lead Plaintiff and the Class in this Litigation against LHC Group, Inc. ("LHC" or the "Company") and its Chief Executive Officer Keith Myers (collectively "Defendants").

The Settlement was reached only after over two years of vigorous litigation and extensive arm's-length settlement negotiations with the substantial assistance of the Honorable Layn R. Phillips (Ret.), a highly respected retired federal District Court Judge (W.D. Okla.), with significant experience in the mediation of complex class actions.  Lead Counsel reviewed and analyzed voluminous, publicly available information concerning LHC, oversaw the process of locating and interviewing numerous witnesses, consulted with experts, successfully opposed Defendants' motion to dismiss and attempt at interlocutory review, thoroughly researched the laws pertinent to the claims and defenses asserted, reviewed and analyzed over 137,000 pages of documents produced by Defendants, and only settled after weeks of hard fought negotiations.  In fact, the Settlement was only achieved after a series of mediator's recommendations.

Lead Counsel firmly believes that this Settlement is an excellent recovery for the Class based on their extensive investigation, analysis of the evidence obtained, past experience in litigating similar cases, the significant risk, expense, and uncertainty of continued litigation, and

---

[1]      The specific terms and conditions of the Settlement are contained in the Stipulation of Settlement dated as of June 16, 2014 (the "Stipulation"), which was previously filed with the Court.  ECF No. 72-3.  Capitalized terms not defined herein have the meaning ascribed to them in the Stipulation.

1

the serious dispute between the parties concerning the merits of the case and damages.  Members of the Class agree.  Pursuant to the Preliminary Approval Order, Notice was mailed to over 54,000 potential Class Members, and a summary notice was published in *Investor's Business Daily* and over *PR Newswire*.  *See* ¶¶3-4 of the Supplemental Declaration of Jennifer M. Keough Regarding Notice Dissemination and Publication ("Supplemental Keough Decl."), filed in conjunction herewith.  Although the deadline for filing objections is November 4, 2014, to date, not a single Class Member has filed an objection to any aspect of the Settlement or the Plan of Allocation.  This is strong evidence that the Settlement is fair, adequate and reasonable.  *See Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990) (fact that only 10% of class objected "strongly favors settlement"); *Nat'l Rural Telecommc'ns Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) (absence of large number of objections raises a strong presumption settlement is fair to the class).[2]

For the reasons set forth herein, and in the Declaration of Deborah Clark-Weintraub in Support of: (1) Motion for Final Approval of Class Action Settlement and Plan of Allocation of Settlement Proceeds; and (2) Application for Award of Attorneys' Fees and Expenses ("Weintraub Decl."), Lead Plaintiff respectfully requests that the Court certify the Class and finally approve the Settlement and Plan of Allocation.

## II.     STATEMENT OF FACTS AND PROCEDURAL HISTORY

The Weintraub Decl. is an integral part of this submission.  The Court is respectfully referred to it for a detailed description of the factual and procedural history of the litigation, the claims asserted, the extensive investigation and discovery undertaken, the settlement negotiations, and the numerous risks and uncertainties presented in this litigation.

## III.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

The standard for approving a proposed class action settlement is whether the proposed settlement is "'fair, adequate and reasonable and is not the product of collusion between the

---

[2]        If any objections or requests for exclusions are received after the date of this submission, Lead Counsel will address them in the reply brief, which will be filed with the Court by December 4, 2014.

parties.'"  *Newby v. Enron Corp.*, 394 F.3d 296, 301 (5th Cir. 2004), citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977).  When a settlement, such as this one, is reached as the result of arms-length negotiations between competent counsel on both sides, the settlement is presumptively valid and "ordinarily may be overcome only if its provisions are not within reasonable bounds or are illegal, unconstitutional or against public policy."  *U. S. v. Texas Education Agency*, 679 F.2d 1104, 1108 (5th Cir. 1982).

The Court has broad discretion in approving class action settlements.  *See Smith v. Crystian*, 91 Fed. Appx. 952, 955 (5th Cir. 2004) ("[A] district court's approval of a settlement is given great deference and 'will not be upset unless the court clearly abused its discretion.'")[3], cert denied sub nom, *Crystian v. Tower Loan of Mississippi Inc.*, 125 S. Ct. 972 (2005); *see also Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir.), cert. denied, 459 U.S. 828 (1982).  This discretion is applied to a well-established, six-factor test for determining whether a proposed settlement is fair, reasonable, and adequate: (1) the existence of fraud or collusion behind the settlement; (2) the probability of plaintiffs' success on the merits; (3) the complexity, expense, and likely duration of the litigation; (4) the stage of the proceedings and the amount of discovery completed; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members.  *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983); *see also Enron*, 394 F.3d at 301.  As demonstrated below, the proposed Settlement is presumptively fair, and application of the six-factor *Reed* test makes clear that final approval is warranted.

### A.    The Settlement Is Entitled to a Presumption of Fairness

Because a court does "not decide the merits of the case or resolve unsettled legal questions" when reviewing a proposed settlement, *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981), a settlement negotiated at arm's length by experienced counsel is presumed fair and adequate, *see, e.g., Tex. Educ. Agency*, 679 F.2d at 1108; *Murillo v. Tex. A&M Univ. Sys.*, 921 F.

---

[3]    Unless otherwise indicated, all citations are omitted and emphasis is added.

Supp. 443, 445 (S.D. Tex. 1996).  So long as "there is no hint that the settlement has been motivated by any improper considerations or at the expense of unrepresented persons, and it appears to have been arrived at after mature, deliberate and informed consideration on both sides," the Court should not "substitute [its] 'own judgment as to optimal settlement terms for the judgment of the litigants and their counsel.'"  *Tex. Educ. Agency*, 679 F.2d at 1108; *see also Lelsz v. Kavanagh*, 783 F. Supp. 286, 297 (N.D. Tex. 1991) ("'[A] presumption of correctness is said to attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery.'" (quoting MANUAL FOR COMPLEX LITIGATION §30.41 (2d Fed. 1985))); *Cotton*, 559 F.2d at 1330.

The parties in this case reached the Settlement only after protracted and intense arm's length negotiations overseen by Judge Phillips, and multiple mediator's recommendations. Weintraub Decl. ¶43.  There was no collusion, and no party or absent Class Member has raised such a concern. *Id*. ¶¶6-7, 50, 63.  Indeed, the case was vigorously litigated.  During the course of this Litigation, Lead Counsel, *inter alia*: (a) conducted a detailed investigation of potential claims against LHC Group, Inc. ("LHC" or the "Company") and Individual Defendant Keith G. Myers ("Myers") that resulted in the filing of the original complaint; (b) moved, pursuant to the PSLRA and on behalf of the Omaha Police and Fire, for appointment of Lead Plaintiff and Lead Counsel; (c) oversaw detailed investigative interviews of numerous confidential witnesses, including former employees of LHC; (d) prepared a detailed amended complaint; (e) successfully opposed Defendants' comprehensive motion to dismiss; (f) successfully opposed Defendants' attempt to seek interlocutory appeal of the Court's decision on the motion to dismiss; (g) drafted Freedom of Information Act ("FOIA") requests to the Securities and Exchange Commission ("SEC") and the Office of Inspector General, Department of Health and Human Services ("OIG HHS"); (h) received and reviewed over 137,000 pages of documents produced by Defendants and the SEC; (i) prepared the initial disclosures required by Fed. R. Civ. P. 26; (j) drafted comprehensive requests for production of documents to Defendants; (k) responded to Defendants' requests for production and interrogatories; (l) engaged in multiple

meet-and-confer teleconferences regarding the scope of discovery; (m) consulted extensively with experts and consultants in the fields of economics and damages; and (n) prepared two detailed mediation briefs, attended a full-day mediation, and had numerous follow-up communications with the mediator regarding settlement of the Action. *Id.*, ¶4

As a result of these efforts, along with information gleaned from the mediation process, Lead Counsel has a firm understanding of the strengths and weaknesses of the Class's claims, and this understanding informed settlement negotiations. *Id.* ¶¶51-59. The Settlement is, therefore, presumptively fair and reasonable. *See Faircloth v. Certified Fin. Inc.*, Case No. 99-3097, 2001 WL 527489, at *4 (E.D. La. May 16, 2001) ("there is typically an initial presumption that a proposed settlement is fair and reasonable when it is the result of arm's length negotiations.").

**B.     There Is No Fraud or Collusion Behind the Settlement**

As noted *supra*, there was no collusion during any part of the settlement negotiations. Weintraub Decl., ¶63. Nor is there any evidence in the record that the Settlement was tainted by fraud. Absent any affirmative evidence of fraud or collusion, the Court can presume that the settlement negotiations were conducted in good faith. *See DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 287 (W.D. Tex. 2007) (there is a "presumption of no fraud or collusion . . . in the absence of any evidence to the contrary."). Thus, the first *Reed* factor supports approval. *See Cotton*, 559 F.2d at 1330 ("[T]he trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.").

**C.     The Stage of the Proceedings and the Amount of Discovery Completed**

This action has been actively litigated since its commencement on June 13, 2012, through negotiation of the Stipulation. Lead Counsel: (a) conducted a thorough investigation into the claims asserted in the highly detailed 59-page Amended Complaint, including interviews by their private investigator with numerous former employees of LHC and review and analysis of voluminous, publicly available documents; (b) briefed and prevailed on a motion to dismiss; (c) defeated Defendants' attempts to secure interlocutory review; and (d) were involved in discovery

5

at the time of settlement.  Furthermore, Lead Counsel reviewed and analyzed over 137,000 pages of documents obtained from Defendants, and consulted with experts on the issues of loss causation and damages.  Lead Counsel's investigation and the discovery obtained from Defendants related to the key factual issues at the core of the Litigation.  Thus, by the time settlement discussions began, Lead Counsel had a solid understanding of the strengths and weaknesses of Lead Plaintiff's claims, both legally and factually, and were able to engage in a rigorous negotiation process with Defendants.  There can be no doubt that the parties reached the instant settlement with a "full understanding of the legal and factual issues surrounding this case." *Manchaca v. Chater*, 927 F. Supp. 962, 967 (E.D. Tex. 1996).

### D.     The Probability of Success on the Merits

As in every complex case of this kind, Lead Plaintiff and the Class faced formidable obstacles to recovery at trial, both with respect to liability and damages.  The claims in this litigation are for violations of Sections 10(b), 20(a), and 20A of the 1934 Act and Rule 10b-5.  Lead Plaintiff would, therefore, have the burden of proving, among other things: "(1) a material misrepresentation or omission by the defendant[s]; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Matrixx Initiatives, Inc. v. Siracusano*, 131 S. Ct. 1309, 1317 (2011).

### 1.     Risks in Proving Liability

Although Lead Plaintiff believes that it would be successful and that the allegations of the Amended Complaint would ultimately be borne out by the evidence, it also recognizes that it faced significant hurdles to proving liability and damages.  Defendants have argued, and would continue to argue, that liability was unwarranted because they made no false and/or misleading statements or omissions concerning LHC, that there was no evidence that Defendants acted with scienter, and that Lead Plaintiff could not prove loss causation.  These would all be major obstacles to Lead Plaintiff prevailing at trial.  For example, even though Lead Plaintiff asserted that Defendants made misstatements and omissions of material fact, Defendants had viable

defenses, including a plausible argument that positive changes to certain of its business metrics were not the result of fraud, but instead stemmed from revised business practices that reflected industry-wide changes in response to new governmental Medicare reimbursement policies.   In support of this argument, Defendants could point to, among other things, extensive investigations by both the U.S. Senate Finance Committee and the Securities and Exchange Commission ("SEC") that failed to result in civil enforcement proceedings.   Thus, Defendants would argue that any statements concerning the positive business metrics could not serve as the basis for a securities fraud violation because they were true.   *See In re Symbol Techs. Class Action Litig.,* 950 F. Supp. 1237, 1242 (E.D.N.Y. 1997) ("to be actionable, statements must have been false or misleading . . . .").

Moreover, according to Defendants, Lead Plaintiff would be unable to demonstrate loss causation, or prove scienter, in the absence of any public statements revealing the purported "truth."   *See Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 230 (5th Cir. 2009) ("[T]o establish loss causation this disclosed information must reflect part of the 'relevant truth' – the truth obscured by the fraudulent statements."); *Ind. Elec. Workers' Pension Trust Fund IBEW v. Shaw Grp., Inc.*, 537 F.3d 527, 535 (5th Cir. 2008) (noting the case was atypical because there was no acknowledged wrongdoing or restated financial reports, which undercut a finding of scienter).   Defendants' scienter argument would also be buttressed by the fact that – even though Lead Plaintiff had alleged insider trading claims against Defendant Myers – the SEC investigation included an examination of Mr. Myers' trading in LHC stock, and the staff ultimately determined not to pursue any enforcement action.   Accordingly, establishing liability was not a forgone conclusion.

### 2.      Risk in Proving Damages

Even if Lead Plaintiff was successful in establishing liability at trial, they would face substantial risk in proving damages.   Defendants would no doubt argue that the price movements of LHC stock during the Class Period were due to market and industry factors, not fraud, and thus, Lead Plaintiff and the Class had not suffered damages.   To counter Lead Plaintiff's

7

damages analysis, Defendants would present expert testimony and alternative damages models. Although Lead Plaintiff would present expert testimony to support its damages figure and to sustain its burden on the damages issues, one cannot predict how a jury would weigh competing expert testimony. *See Streber v. Hunter*, 221 F.3d 701, 726 (5th Cir. 2000) (stating jury can believe whichever expert it finds more credible); *In re Zonagen, Inc. Sec. Litig.*, 322 F. Supp. 2d 764, 782 (S.D. Tex. 2003) (granting summary judgment where plaintiffs' expert report was insufficient to establish loss causation as a matter of law); *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985), aff'd, 798 F.2d 35 (2d Cir. 1986) ("In this 'battle of experts,' it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad non-actionable factors such as general market conditions."). Indeed, since expert damages testimony rests on many subjective assumptions, any of which could be rejected by a jury as speculative or unreliable, it is certainly possible that a jury could be swayed by Defendants' experts and find that Lead Plaintiff and the Class had suffered little or no damages.[4] *See In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 506 (W.D. Pa. 2003) ("A jury would therefore be faced with competing expert opinions representing very different damage estimates, thus adding further uncertainty as to how much money – if any – the Class might recover at trial.").

Throughout settlement negotiations Lead Counsel was highly cognizant of the fact that, had the case proceeded to summary judgment and trial, it would have been difficult to prove Lead Plaintiff's case and success was by no means assured. *See Schwartz v. TXU Corp.*, Case No. 3: 02-CV-2243-K, 2005 WL 3148350, at *29 (N.D. Tex. Nov. 8, 2005) ("Federal Securities class action litigation is notably difficult and notoriously uncertain."). Consequently, Lead

---

[4]    Lead Counsel anticipates that the parties would disagree on the following damages issues: (a) the appropriate economic model for determining the amount by which LHC common stock allegedly was artificially inflated (if at all) during the Class Period; (b) the amounts by which LHC common stock allegedly was artificially inflated (if at all) during the Class Period; and (c) the extent to which the various matters that Lead Plaintiff alleges were materially false or misleading influenced (if at all) the trading prices of LHC common stock at various times during the Class Period.

Counsel believes that the $7,850,000 all cash settlement represents an excellent result for the Class, and that this factor supports final approval. *See Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 844 (E.D. La. 2007) (significant factual and legal obstacles that could have substantially reduced plaintiff's probability of success on the merits, or minimized their recovery even if successful on the merits, weighed in favor of settlement).

    **E.**    **The Settlement Falls Within the Range of Reasonableness**

The determination of a "reasonable" settlement is not susceptible to a single mathematical equation yielding a particularized sum. Rather, "in any case there is a range of reasonableness with respect to a settlement . . . ." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972) (Friendly, J.); *Fickinger v. C.I. Planning Corp.*, 646 F. Supp. 622, 630 (E.D. Pa. 1986). To assess the reasonableness of a proposed settlement seeking monetary relief, an inquiry "should contrast settlement rewards with likely rewards if case goes to trial." *In re Chicken Antitrust Litig.*, 669 F.2d 228, 239 (5th Cir 1982). Thus, "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n.2 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000); *Parker*, 667 F.2d at 1210 n.6; *McNary v. Am. Sav. and Loan Ass'n*, 76 F.R.D. 644, 650 (N.D. Tex. 1977).

Under the proposed settlement, the Class will receive $7,850,000 – a substantial amount – in exchange for the release of all claims against Defendants. Based on preliminary damage studies prepared by Lead Plaintiff's expert on causation and damages, this equates to approximately 7.4%-10.3% of estimated provable damages.[5] Lead Plaintiff respectfully submits that considering the risks of continued litigation (*see*, §III.D, *supra*), and the time and expense that would be incurred to prosecute the action through trial and appeals (*see*, §III.F,

---

[5]    Preliminary estimates of the Class's provable damages attributable to the alleged fraud were in the range of $76 million - $106 million. However, these figures are based on Lead counsel's theory of liability and assume that every element of the Class's liability and damages theories are accepted by the jury as being correct and recoverable, which Defendants vigorously dispute.

*infra*), the settlement represents a significant recovery that clearly falls within the range of reasonableness. *See In re Lease Oil Antitrust Litig. (No. II)*, 186 F.R.D. 403, 435 n.47 (S.D. Tex. 1999) (noting various studies showing recoveries of between 4% and 14% of damages).

**F.     The Complexity, Expense, and Likely Duration of Litigation**

Another reason for the Court to approve the proposed settlement is the complexity, duration, and risk of further litigation. *See Manchaca*, 927 F. Supp. at 966. Here, no doubt exists that continued litigation would require additional, substantial expenditure of time and money, and there would be a significant risk that the Class would obtain a result far less beneficial than the one provided by the settlement. For example, although Lead Counsel has already reviewed a substantial number of documents produced by Defendants and the SEC, the complex issues involved in this Litigation would require further production by Defendants and possibly third-parties, review of these additional documents by Lead Counsel and their experts, significant motion practice, and the taking and defending of numerous depositions. Indeed, at the time settlement was reached, Lead Counsel was preparing for class certification. This process would have involved substantial briefing, extensive and costly expert involvement, including deposition testimony by experts for both sides, and deposition testimony by the Lead Plaintiff. *See Halliburton Co. v. Erica P. John Fund, Inc.*, 131 S. Ct. 2398 (2014) (holding that defendants may rebut the presumption of reliance at the class certification stage by showing that the alleged misrepresentations did not impact the stock price). It also would have involved substantial risk to the Class. *In re Seitel, Inc. Secs. Litig.*, 245 F.R.D. 263, 278 (S.D. Tex. 2007) (denying class certification based on a failure to demonstrate loss causation).

Additional risk and cost would have followed. After the close of discovery, the parties would then brief summary judgment and prepare for trial. The costs and risks associated with litigating this action to a verdict, not to mention through the inevitable appeals, would have been high, and the process would require hundreds of hours of this Court's time and resources. *See Clark v. Lomas & Nettleton Fin. Corp.*, 79 F.R.D. 641, 651 (N.D. Tex. 1978), *vacated on other*

10

*grounds,* 625 F. 2d 49 (5th Cir. 1980) (noting that the expense of trial can be "staggering," and carries with it the "distinct possibility" that the trial will result in no recovery").

Finally, if taken to trial, this Litigation would easily require an additional 1-2 years before a recovery, if any, was obtained for the Class. *See In re OCA, Inc. Sec. & Derivative Litig.,* Civil Action No. 05-2165, 2009 WL 512081, at *11 (E.D. La. Mar. 2, 2009) ("After trial, the parties could still expect years of appeals."). *A fortiori*, this factor supports preliminary approval of the settlement. *See Strougo ex rel. Brazilian Equity Fund v. Bassini*, 258 F. Supp. 2d 254, 258 (S.D.N.Y. 2003) ("'it is beyond cavil that continued litigation in this multi-district securities class action would be complex, lengthy, and expensive, with no guarantee of recovery by the class members'"); *OCA,* 2009 WL 512081 at *11.

### G.    The Opinions of Class Counsel, the Class Representative, and Absent Class Members

"Counsel are the Court's 'main source of information about the settlement' . . . and therefore the Court will give weight to class counsel's opinion regarding the fairness of settlement." *Turner*, 472 F. Supp. 2d at 852.  "[W]here the parties have conducted an extensive investigation, engaged in significant fact-finding and Lead Counsel is experienced in class-action litigation, courts typically 'defer to the judgment of experienced trial counsel who has evaluated the strength of his case.'" *TXU Corp.*, 2005 WL 3148350, at *21.

Here, Lead Counsel has considerable experience in complex class action and securities litigation and believes the settlement merits approval.  Weintraub Decl., ¶¶59, 72.  Lead Plaintiff – an institutional investor of the type Congress sought to empower when it enacted the Private Securities Litigation Reform Act of 1995 – also supports the proposed settlement.  *See* Declaration of Lead Plaintiff City of Omaha Police and Fire Retirement System, ¶3 (filed concurrently herewith); *see also In re UBS Auction Rate Sec. Litig.*, No. 08 Civ. 2967, 2008 WL 2796592, at *4 (S.D.N.Y. July 16, 2008) ("the PSLRA reflects a preference on the part of the Congress that passed it that institutional investors are the most desirable lead plaintiffs").  Finally, although the deadline for filing objections is November 4, 2014, to date, not a single

11

Class Member has filed an objection to any aspect of the Settlement or the Plan of Allocation. *A fortiori*, this factor weighs in favor of final approval.

For all of the foregoing reasons, Lead Plaintiff respectfully submits that the proposed Settlement is fair, reasonable, and adequate. Final approval is, therefore, appropriate.

## IV.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

The Settlement was reached prior to a decision on class certification. Thus, although the Court provisionally certified the Class in its Preliminary Approval Order, the Court must still make a final determination of whether the Class satisfies the requirements of Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure.[6] *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619-621 (1997). Rule 23(a) establishes four prerequisites to class certification: (i) "numerosity," (ii) "commonality," (iii) "typicality," and (iv) "adequacy" of representation. *See id.* at 613. In addition, the Class must meet one of the three requirements of Rule 23(b). *See* Fed. R. Civ. P. 23.

Courts have generally found securities claims to be particularly well-suited for class action status because they allow for the policies behind the securities laws to be enforced in circumstances where there are numerous investors with small individual claims that otherwise would effectively be barred from litigation. *See Blackie v. Barrack,* 524 F.2d 891, 899 (9th Cir. 1975); *Keasler v. Natural Gas Pipeline Co. of Am.*, 84 F.R.D. 364, 368 (E.D. Tex. 1979) ("It is desirable that securities fraud cases involving a large number of plaintiffs with small individual claims proceed as class actions."); *In re Enron Corp. Sec. & ERISA Litig.*, No. H-01-3624, 2003 WL 22494413, at *2 (S.D. Tex. July 24, 2003) (preliminarily approving settlement and conditionally certifying class for settlement purposes). This action is no exception and, as explained below, the Class satisfies each of the requirements set forth above.

---

[6]    For the purposes of settlement, Lead Plaintiff is asking the Court to certify a Class consisting of all Persons who purchased or otherwise acquired LHC common stock between July 30, 2008 and October 26, 2011, inclusive. Excluded from the Class are: (i) persons otherwise meeting the definition of the Class who submit valid and timely requests for exclusion from the Class; and (ii) Defendants, directors and officers of LHC and their families and affiliates. *See* Stipulation, ¶14.

### A.    The Putative Class Is Sufficiently Numerous

The first element of the four-part threshold for class certification requires that "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  In determining numerosity, the exact size of the Class need not be known so long as general knowledge and common sense indicate that the class is large,[7] and numerosity is "generally assumed to have been met in class action suits involving nationally traded securities." *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1039 (5th Cir. 1981).

During the Class Period, LHC had more than 18 million shares of common stock issued and outstanding.  This stock was actively traded on the NASDAQ, and Lead Plaintiff believes that beneficial holders of LHC common stock number in the hundreds or thousands and are geographically located throughout the United States, making joinder of all Class Members impracticable.  *See Rubenstein v. Collins*, 162 F.R.D. 534, 537 (S.D. Tex. 1995) (an estimated 12 million shares traded met the numerosity requirement); *Eatmon v. Palisades Collection, LLC*, No. 2:08-CV-306-DF-CE, 2010 WL 1189571, at *4 (E.D. Tex. Mar. 5, 2010) (considering the "geographic dispersion of the class"); *In re NeoPharm, Inc. Sec. Litig.*, 225 F.R.D. 563, 565 (N.D. Ill. 2004) (certifying class where the company had more than 16 million shares being traded on NASDAQ such that it could be "reasonably inferred that hundreds, if not thousands, of persons would be included in the proposed class").  The numerosity requirement is, therefore, easily met.  *See Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (finding that a class of 100 to 150 members satisfies numerosity)

### B.    Common Questions of Law or Fact Exist

Rule 23(a)(2) is satisfied where there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  Commonality does not require a showing that the interests and claims of the class members are identical; it requires only that "'there is at least one issue whose resolution will affect all or a significant number of the putative class members.'" *Forbush v. J.C.*

---

[7]    *See Schwartz v. Harp*, 108 F.R.D. 279, 281-282 (C.D. Cal. 1985).

*Penney Co., Inc.*, 994 F.2d 1101, 1106 (5th Cir. 1993), *abrogated on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011).

Here, questions that are common to the proposed Class include: (a) whether Defendants violated the 1934 Act; (b) whether Defendants omitted and/or misrepresented material facts; (c) whether Defendants knew or recklessly disregarded that their statements were false and misleading; (d) whether the prices of LHC securities were artificially inflated; and (e) the extent of damage sustained by Class members and the appropriate measure of damages.   Securities fraud actions containing common questions such as these have repeatedly been held to be prime candidates for class certification.  *See In re Elec. Data Sys. Corp. Secs. Litig.*, 226 F.R.D. 559, 564 (E.D. Tex. 2005), *aff'd*, 429 F.3d 125 (5th Cir. 2005); *In re FirstPlus Fin. Group, Inc., Sec. Litig.*, No. 3:98-CV-2551-M, 2002 WL 31415951, at *4 (N.D. Tex. Oct. 28, 2002).   In short, because the core complaint of all Class members is that they purchased or acquired LHC common stock at artificially inflated prices, the commonality requirement of Rule 23(a)(2) is satisfied.  *See In re Wireless Facilities, Inc. Sec. Litig.*, 253 F.R.D. 630, 635 (S.D. Cal. 2008) (finding "core issue" in a securities litigation to be plaintiffs' acquisition of defendant's securities at artificially inflated prices).

### C.      Lead Plaintiff's Claims Are Typical of Those of the Class

The typicality requirement is satisfied as Lead Plaintiff's claims arise from the same course of conduct as absent Class Members' claims.  *See James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001), *abrogated on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011), (typicality requires only that "the class representative's claims have the same essential characteristics of those of the putative class").   Typicality does not require that the interests of the named representatives and the class members be identical.  *See Phillips v. Joint Legislative Comm. on Performance & Expenditure Review of State of Miss.*, 637 F.2d 1014, 1024 (5th Cir. 1981); *Elec. Data Sys. Corp.*, 226 F.R.D. at 565 ("[f]actual differences do not defeat typicality if the claims arise from a similar course of conduct and share the same legal theories").

14

Here, Lead Plaintiff's claims arise from the same course of conduct by the Defendants and are predicated on the same legal theories as the claims of all other Class Members. The typicality requirement of Rule 23(a) is, therefore, met. *See Durrett v. John Deere Co*., 150 F.R.D. 555, 558 (N.D. Tex. 1993); *see also Shipes v. Trinity Indus*., 987 F.2d 311, 316 (5th Cir. 1993) (test for typicality, like commonality, is not demanding).

### D.      Lead Plaintiff Is a More Than Adequate Representative of the Class

The adequacy requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem*, 521 U.S. 625. The factors relevant to a determination of adequacy are: (1) the absence of potential conflict between the named plaintiff and the class members; and (2) that counsel chosen by the representative parties is qualified, experienced, and able to vigorously conduct the proposed litigation. *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992); *Longden v. Sunderman*, 123 F.R.D. 547, 557 (N.D. Tex. 1988).

Here, as described above, Lead Plaintiff – the proposed Class Representative – has claims that are typical of and coextensive with those of the Class. Lead Plaintiff, like all Class members, purchased or otherwise acquired the common stock of LHC at artificially inflated prices during the Class Period as a result of Defendants' alleged materially false and misleading statements, and was allegedly damaged thereby. There is, therefore, no conflict between Lead Plaintiff and the Class it seeks to represent.

Furthermore, Lead Plaintiff has retained Scott+Scott, Attorneys at Law, LLC ("Scott+Scott") and the Lemmon Law Firm to serve as Lead and Liaison Counsel, respectively, in this Litigation. Scott+Scott is highly experienced in securities class action litigation and has successfully prosecuted many securities and other complex class actions in courts throughout the United States. *See* Declaration of Daryl F. Scott in Support of Scott+Scott, Attorneys at Law, LLP's Application for Award of Attorneys' Fees and Reimbursement of Expenses ("Scott Decl."), Exh. A (Scott+Scott firm resume). Likewise, the Lemmon Law Firm has significant class action experience, and is well respected for its work in federal and state courts throughout

Louisiana.  *See* Declaration of Andrew A. Lemmon in Support of The Lemmon Law Firm's Application for Award of Attorneys' Fees and Reimbursement of Expenses ("Lemmon Decl."), Exh. A.

Since Lead Plaintiff is an adequate representative of the Class, and its counsel are qualified, experienced, and capable of prosecuting this Litigation, the requirements of Rule 23(a)(4) are satisfied.

**E.      The Requirements of Rule 23(b)(3) Are Satisfied**

In addition to satisfying all of the criteria of Rule 23(a), a party seeking class certification must also satisfy one of the requirements of Rule 23(b).  Certification of a class under Rule 23(b)(3) requires that: (1) common issues predominate over individual issues; and (2) the class action mechanism is superior to other methods of adjudicating the controversy.  Fed. R. Civ. P. 23(b)(3).

**1.      Common Legal and Factual Questions Predominate in the Litigation**

Predominance exists where, as here, Defendants are "alleged to have acted wrongfully in the same basic manner towards an entire class." *Eatmon*, 2010 WL 1189571, at *8.  "Efficiency is the traditional focus of the predominance test" and "[w]here significant common issues can be resolved for all claimants in a single adjudication, the advantage of a class-wide proceeding is obvious." *Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 955 (E.D. Tex. 2000).  The predominance requirement is, therefore, "readily met in certain cases alleging consumer or ***securities fraud*** or violations of the antitrust laws." *Amchem*, 521 U.S. at 625.

Here, the same set of operative facts and the issues of falsity, materiality, scienter, and causation are common to all Class members and clearly predominate over any individual issues. Each Class member purchased LHC common stock during the Class Period at prices that were allegedly artificially inflated as a result of Defendants' misrepresentations and omissions in violation of sections 10(b) and 20(a) of the 1934 Act and Rule 10b-5, and each was harmed when the truth was revealed.  The commonality on these issues, which are central to Defendants'

16

liability, is sufficient to meet the predominance test.  *See Longden*, 123 F.R.D. at 553 ("Courts faced with similar fact situations as the case at bar have held that where the complaint alleges a scheme or common course of misconduct against a large class of purchasers allegedly defrauded over a period of time by similar misrepresentations, class certification is appropriate, regardless of the existence of some differences in class members' positions.").[8]

## 2.      The Class Action Is Superior to Other Methods of Adjudication

In determining whether the "superiority" requirement of Rule 23(b)(3) is satisfied, the court must consider: (i) the interests of class members in individually controlling the litigation of their own cases; (ii) the extent and nature of other litigation involving the same issues; (iii) the desirability of concentrating the litigation in this forum; and (iv) any difficulties that may be encountered in managing a class action.  Fed. R. Civ. P. 23(b)(3).

The first factor addresses class members' interests in prosecuting their own cases.  This factor "matters mainly when absent class members have personal injury claims."  *Lehocky v. Tidel Techs., Inc.*, 220 F.R.D. 491, 510 (S.D. Tex. 2004).  "When only economic losses are at issue, the interest to personally control the litigation is small.  As long as the named plaintiffs seek to maximize the recovery for the class, little else matters."  *Id.*  And, "[a]lthough such desires are pertinent to the analysis, they should be subordinated to the advantages of having a defendant's liability determined in one proceeding when virtually all legal and factual issues are common to the class members."  *Durrett*, 150 F.R.D. at 559.  Here, as discussed *supra*, Lead Plaintiff is plainly interested in maximizing the Class recovery, and Defendants will certainly benefit from resolving all litigation in one proceeding.  Finally, because the proposed settlement allows class members to opt out, those investors who still wish to pursue individual litigation remain free to do so.

---

[8]        *See also* Fed. R. Civ. P. 23, advisory committee note to 1966 Amendment ("a fraud perpetrated on numerous persons by the use of similar misrepresentations" should be appropriate for class action treatment if liability is found); *Treasure Chest Casino, LLC*, 186 F.3d at 626; *In re Sys. Software Assocs., Inc. Sec. Litig.*, No. 97 C 177, 2000 WL 1810085, at *4 (N.D. Ill. Dec. 8, 2000).

The second factor relates to the pendency of other litigation.  Other than two derivative cases that are not being settled as part of this settlement, the parties are aware of no other litigation relating to the issues addressed in this case.  Moreover, "a class action might prevent the initiation of further litigation if class members who have not filed suit could have their rights adequately determined by a representative in a class action." *Id*. at 559-60.  Accordingly, this factor weighs in favor of class certification. *See Lehocky*, 220 F.R.D. at 510.

As for the third factor, desirability of concentrating litigation in this forum, Lead Plaintiff has shown a desire to focus the litigation in this Court by filing the first action in the Western District of Louisiana.  There have been no other cases filed by Class members in other jurisdictions, and the Company is located in this district.  Furthermore, the Court is familiar with the facts and legal issues of the case, having ruled on the motion to dismiss and other matters. The third factor, therefore, supports certification of a settlement class. *See id*.

Finally, courts certifying settlement classes do not need to consider the fourth factor, which focuses on the manageability of a class action.  As the Supreme Court noted in *Amchem*, when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems for the proposal is that there be no trial."  521 U.S. at 620; *see also Schwartz*, 2005 WL 3148350, at *16.

### F.     The Court Should Appoint Lead and Liaison Counsel as Counsel for the Class

A court that certifies a class must also appoint class counsel.  *See* Fed. R. Civ. P. 23(g). The Rule directs the Court to consider: "(1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).

Scott+Scott and the Lemmon Law Firm were appointed as Lead Counsel and Liaison Counsel, respectively, pursuant to this Court's September 18, 2012 Order (ECF No. 29) and preliminary Lead and Liaison Counsel for the Class pursuant to the Preliminary Approval Order (ECF No. 76). Both firms have done considerable work identifying and investigating potential claims in this matter – as evidenced by the fact that they filed the first and only complaint in the Litigation. They have also devoted substantial time and effort to the prosecution of this Litigation, demonstrated their knowledge of the applicable law by prevailing on the motion to dismiss, and committed the resources necessary to tenaciously prosecute the action. Accordingly, Lead Plaintiff respectfully requests that the Court appoint these firms to continue representing the Class.

## V. THE NOTICE PROVIDED MEETS THE REQUIREMENTS OF RULE 23 AND SATISFIES DUE PROCESS

The Court approved an extensive notice program in its Preliminary Approval Order dated August 1, 2014, and Lead Plaintiff has complied with the Order. Notice was given to Class Members by mail, the Internet, and publication. Copies of the Court-approved Notice describing the Settlement terms, the procedures for opting out of the Class or objecting to the Settlement, and providing details regarding the Settlement Hearing, were timely mailed by the Court-appointed claims administrator, The Garden City Group, Inc. ("GCG") to an aggregate of 52,629 potential Class Members and the largest brokerage firms, banks, institutions, and other nominees. *See* Declaration of Jennifer M. Keough Regarding Notice Dissemination and Publication, ECF No. 78-1, Exh. A ("Keough Decl."), ¶¶9-10. To date, GCG has mailed approximately 54,463 Notice packets to potential Class Members. *See* Supplemental Keough Decl., ¶3.

On August 27, 2014, the Court-approved Summary Notice was published in *Investors Business Daily* and over the *PR Newswire*. *See* Keough Decl., ¶10. The published notice clearly and concisely provided information concerning the Settlement and the means to obtain a copy of the Notice. *See id.*

19

Finally, GCG posted the notices and other relevant documents online at www.lhcsecuritieslitigation.com, and provided a phone number for Class Members to call if they had questions concerning the settlement.  Keough Decl., ¶12 and Ex. A of the Keough Decl. at 2. Courts routinely find that comparable notice programs meet the requirements of due process and Rule 23.  *See  Enron Corp. Sec. & ERISA Litig.*, 2003 WL 22494413, at *3; *In re OCA, Inc. Sec. & Deriv. Litig.*, CIV A 05-2165, 2008 WL 4681369, at *14-16 (E.D. La. Oct. 17, 2008); *W. Wash. Laborers-Employers Pension Trust v. Panera Bread Co.*, No. 4:08CV00120 ERW, 2011 WL 720060, at *2-3 (E.D. Mo. Feb. 22, 2011).

## VI.    THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE

Assessment of a plan of allocation of settlement proceeds in a class action under Rule 23 of the Federal Rules of Civil Procedure is governed by the same standards of review applicable to the settlement as a whole – the plan must be "fair, adequate and reasonable."  *Chicken Antitrust*, 669 F.2d at 238.  An allocation formula need only have a reasonable, rational basis, particularly if recommended by "experienced and competent" class counsel.  *White v. NFL*, 822 F. Supp. 1389, 1420 (D. Minn. 1993), aff'd, 41 F.3d 402 (8th Cir. 1994); *In re Am. Bank Note Holographics, Inc., Sec. Litig.*, 127 F. Supp. 2d 418, 430 (S.D.N.Y. 2001) (approving allocation plan and according counsel's opinion "considerable weight").  District courts enjoy "broad supervisory powers over the administration of class-action settlements to allocate the proceeds among the claiming class members . . . equitably."  *Beecher v. Able*, 575 F.2d 1010, 1016 (2d Cir. 1978); *accord Chicken Antitrust*, 669 F.2d at 238.

Here, the proposed Plan of Allocation[9] reflects Lead Plaintiff's expert's view of the likely probable damages had this litigation proceeded to trial and was prepared based on Lead Plaintiff's allegations that the market price of LHC stock was artificially inflated; that the degree of inflation decreased with partial disclosures of adverse information during the Class Period (independent of net of market and industry factors); and that the value of the claim should vary

---

[9]    The Plan of Allocation is fully described in the Notice at 4-5.  The Notice is attached to the Keough Decl. as Exh. A.  ECF No. 78-1.

depending on when the claimant bought and/or sold LHC stock. The plan is designed to fairly and rationally allocate the Settlement proceeds among Class Members. Specifically, the Plan calculates each Settlement Member's total recognized losses and allocates the recovery based on the timing of each Class Member's purchases and sales relative to the alleged corrective disclosures. Each Class Member will receive his or her *pro rata* share of the funds based on the calculation of recognized losses. This type of distribution is "'clearly a reasonable approach.'" *In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1262 (D. Kan. 2006) (quoting *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004)).[10] Accordingly, Lead Plaintiff submits that the Plan of Allocation is adequate, fair and reasonable.

## VII. CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests the Court grant the Motion.

Date: October 21, 2014                    Respectfully submitted,


                                          */s/ John T. Jasnoch*
                                          JOHN T. JASNOCH (*pro hac vice*)
                                          **SCOTT+SCOTT, ATTORNEYS AT LAW, LLP**
                                          707 Broadway, Suite 1000
                                          San Diego, California 92101
                                          Telephone: (619) 233-4565
                                          Facsimile: (619) 233-0508
                                          Email: jjasnoch@scott-scott.com


                                          */s/ Andrew A. Lemmon*
                                          ANDREW A. LEMMON (#18302)
                                          **LEMMON LAW FIRM, LLC**
                                          15058 River Road
                                          PO Box 904
                                          Hahnville, LA 70057
                                          Telephone: (985) 783-6789
                                          Facsimile: (985) 783-1333
                                          Email: Andrew@lemmonlawfirm.com


                                          DAVID R. SCOTT
                                          **SCOTT+SCOTT, ATTORNEYS AT LAW, LLP**

---

[10] To date, there have been no objections to the Plan of Allocation.

21

156 South Main Street
P.O. Box 192
Colchester, CT  06415
Telephone:   (860) 537-5537
Facsimile:   (860) 537-4432
Email:  david.scott@scott-scott.com

DEBORAH CLARK-WEINTRAUB
JOSEPH P. GUGLIELMO
**SCOTT+SCOTT, ATTORNEYS AT LAW, LLP**
The Chrysler Building
405 Lexington Ave., 40th Floor
New York, NY 10174
Telephone:   (212) 223-6444
Facsimile:   (212) 223-6334
Email:  dweintraub@scott-scott.com
            jguglielmo@scott-scott.com

*Attorneys for Plaintiff City of Omaha Police and*
*Fire Retirement System*

22

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 21, 2014, I presented the foregoing Memorandum of Law in Support of Motion for Final Approval of Class Action Settlement and Plan of Allocation  to the Clerk of the Court for filing and uploading to the EM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I further certify that there are no non-CM/ECF participants that require notice of this filing.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 21st day of October, 2014, at San Diego, California.


*/s/ John T. Jasnoch*
JOHN T. JASNOCH (*pro hac vice*)
**SCOTT+SCOTT, ATTORNEYS AT LAW, LLP**
707 Broadway, Suite 1000
San Diego, California 92101
Telephone:   (619) 233-4565
Facsimile:   (619) 233-0508
Email:   jjasnoch@scott-scott.com