# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISION

| | |
|---|---|
| CITY OF OMAHA POLICE AND FIRE RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>               Plaintiff,<br><br>  - against-<br><br><br>LHC GROUP, INC. AND KEITH G. MYERS,<br><br>             Defendants. | **Case No. 6:12-CV-01609-JTT-CMH**<br><br><br>**LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION COSTS AND EXPENSES** |

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................... 1

II.     FACTUAL AND PROCEDURAL HISTORY ......................................... 1

III.    THE COURT SHOULD APPROVE THE FEE REQUEST ........................... 2

     A.    Lead Counsel Is Entitled to Compensation Based upon the Benefits
            Created by the Litigation .................................................................... 2

     B.    The Court Should Award Attorneys' Fees Using the Percentage of
            Recovery Method ................................................................................ 3

     C.    An Award of 33 1/3% is Appropriate Under the Percentage of the
            Fund Method ...................................................................................... 5

     D.    Application of the *Johnson* Factors Supports Lead Counsel's Request
            for a 33 1/3% Fee ................................................................................ 6

           1.    The Time and Labor Required ............................................... 7

           2.    Novelty and Difficulty of the Issues .................................... 8

           3.    Skill Required: the Experience, Reputation, and Ability
               of the Attorneys .................................................................. 12

           4.    The Preclusion of Other Employment ................................. 13

           5.    The Customary Fee For Similar Work in The Community ..................... 13

           6.    Whether The Fee is Fixed or Contingent ............................. 14

           7.    Time Limitations Imposed by The Client or The Circumstances ............. 15

           8.    The Amount Involved And The Results Obtained ................. 15

           9.    The Undesirability of The Case ........................................... 15

           10.   The Nature And Length of The Professional Relationship
               With The Client................................................................... 16

           11.   Awards in Similar Cases ..................................................... 16

     E.    A Lodestar Cross-Check Confirms the Reasonableness of the
            Requested Fee .................................................................................. 17

IV.     LEAD COUNSEL'S EXPENSES ARE REASONABLE AND WERE
     NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED ............... 18

V.      LEAD PLAINTIFF IS ENTITLED TO COSTS AND EXPENSES
     PURSUANT TO 15 U.S.C. §78u-4(a)(4).................................................... 20

VI.     CONCLUSION.................................................................................... 21

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Anixter v. Home-Stake Prod. Co.*,
  77 F.3d 1215 (10th Cir. 1996) ...................................................................15

*Antonopulos v. N. Am. Thoroughbreds. Inc.*,
  No. 87-0979, 1991 WL 427893 (S.D. Cal. May 6, 1991) ......................................17

*Backman v. Polaroid Corp.*,
  910 F.2d 10 (1st Cir. 1990).......................................................................15

*Barrera v. Nat'l Crane Corp.*,
  No. SA-10-CV-0196, 2012 WL 242828 (W.D. Tex. 2012) ....................................16

*Barton v. Drummond Co.*,
  636 F.2d 978 (5th Cir. 1981) .....................................................................2

*Bergquist v. FyBX Corp.*,
  No. Civ. A. 02-722, 2003 WL 22081368 (E.D. La. Aug. 29, 2003) .........................10

*Billitteri v. Sec. Am., Inc.*,
  No. 11-cv-00191, 2011 WL 3585983 (N.D. Tex. Aug. 4, 2011) ............................13

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980)...............................................................................2

*Burford v. Cargill, Inc.*,
  Civil Action No. 05-0283, 2012 WL 5471985 (W.D. La. Nov. 8, 2012) (Hicks, J.) ...... *passim*

*Clark v. Lomas & Nettleton Fin. Corp.*,
  79 F.R.D. 641 (N.D. Tex. 1978), *vacated on other grounds*, 625 F.2d 49 (5th Cir.
  1980) ...............................................................................................9

*Di Giacomo v. Plains All Am. Pipeline*,
  No. Civ.A. H-99-4137, 2001 WL 34633373 (S.D. Tex. Dec. 19, 2001).................8, 15, 18, 19

*Evans v. TIN, Inc.*,
  Civil Action No. 11-2067, 2013 WL 4501061 (E.D. La. Aug. 21, 2013) (Afrik, J.) ..........4, 17

*Faircloth v. Certified Fin. Inc.*,
  No. Civ. A. 99-3097, 2001 WL 527489 (E.D. La. May 16, 2001)...................16, 19

*Garza v. Sporting Goods Properties, Inc.*,
  No. Civ. A. SA-93-CA-108, 1996 WL 56247 (W.D. Tex. Feb. 6, 1996)...............16

*Geffon v. Micrion Corp.*,
   249 F.3d 29 (1st Cir. 2001) .................................................................................15

*Goldstein v. MCI Worldcom*,
   340 F.3d 238 (5th Cir. 2003) ........................................................................10, 14

*Greebel v. FTP Software, Inc.*,
   194 F.3d 185 (1st Cir. 1999) .................................................................................15

*Green v. Nuveen Advisory Corp.*,
   295 F.3d 738 (7th Cir. 2002) .................................................................................15

*Gunter v. Ridgewood Energy Corp.*,
   223 F.3d 190 (3d Cir. 2000).................................................................................2, 3

*Halliburton Co. v. Erica P. John Fund, Inc.*,
   134 S. Ct. 2398 (2014) ...........................................................................................11

*Hicks v. Morgan Stanley*,
   No. 01 Civ. 10071, 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) .........................20

*In re Am. Bus. Fin. Services Inc. Noteholders Litig.*,
   No. 05-232, 2008 WL 4974782 (E.D. Pa. Nov. 21, 2008) ....................................19

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
   No. 04 civ 814, 2012 WL 345509 (S.D.N.Y. Feb. 2, 2012)...................................20

*In re Apple Computer Sec. Litig.*,
   No. C-84-20148(A)-JW, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991)...................15

*In re BankAmerica Corp. Sec. Litig.*,
   210 F.R.D. 694 (E.D. Mo. 2002) ...........................................................................21

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
   No. 07-61542-Civ., 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011)........................14

*In re Bayou Sorrel Class Action*,
   Case No. 6:04cv1101, 2006 WL 3230771 (W.D. La. Oct. 31, 2006) (Haik, J.) ............2, 5, 14

*In re Catfish Antitrust Litig.*,
   939 F. Supp. 493 (N.D. Miss. 1996)....................................................................6, 21

*In re Cendant Corp. Sec. Litig.*,
   404 F.3d 173 (3d Cir. 2005)......................................................................................4

*In re Chambers Dev. Sec. Litig.*,
   912 F. Supp. 852 (W.D. Pa. 1995)............................................................................5

*In re Combustion, Inc.*,
   968 F. Supp. 1116 (W.D. La. 1997)................................................................5, 6, 16

*In re Educ. Testing*,
   447 F. Supp. 2d 612 (E.D. La. 2006) (Vance, J.) ....................................................4

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
   586 F. Supp. 2d 732 (S.D. Tex. 2008) ..................................................................15

*In re Heritage Bond Litig.*,
   No. 02-ML-1475, 2005 WL 1594389 (C.D. Cal. June 10, 2005)..........................16

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
   194 F.R.D. 166 (E.D. Pa. 2000).......................................................................9, 18

*In re Indep. Energy Holdings PLC Sec. Litig.*,
   No. 00 Civ 6689, 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003)........................10

*In re Marsh & McLennan Co. Inc. Sec. Litig.*,
   No. 04 cv 08144, 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009)............................21

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ................................................................................16

*In re The Mills Corp. Sec. Litig.*,
   265 F.R.D. 246 (E.D. Va. 2009) ...........................................................................21

*In re OCA, Inc. Sec. and Derivative Litig.*,
   Civil Action No. 05-2165, 2009 WL 512081 (E.D. La. March 2, 2009)........................ *passim*

*In re Pacific Enter. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ..................................................................................16

*In re Prudential-Bache Energy Income P'ships Secs. Litig.*,
   MDL No. 888, 1994 WL 150742 (E.D. La. April 13, 1994)....................................5

*In re Public Serv. Co. of New Mexico*,
   No. 91-0536M, 1992 WL 278452 (S.D. Cal. July 28, 1992) .................................16

*In re Remeron End-Payor Antitrust Litig.*,
   No. Civ. 02-2007, 2005 WL 2230314 (D.N.J. Sept. 13, 2005) ............................19

*In re Rent-Way Sec. Litig.*,
   305 F. Supp. 2d 491 (W.D. Pa. 2003)...................................................................17

*In re Rite Aid Corp. Sec. Litig.*,
   396 F.3d 294 (3d Cir. 2005)....................................................................................3

*In re Rite Aid Corp. Sec. Litig.*,
   146 F. Supp. 2d 706 (E.D. Pa. 2001) ...................................................................19

*In re Safety Components, Inc. Sec. Litig.*,
   166 F. Supp. 2d 72 (D.N.J. 2001) .......................................................................18

*In re Seitel, Inc. Secs. Litig.*,
   245 F.R.D. 263 (S.D. Tex. 2007)........................................................................10

*In re Shell Oil Refinery*,
   155 F.R.D. 552 (E.D. La.1993)...........................................................................16

*In re Sumitomo Copper Litig.*,
   74 F. Supp. 2d 393 (S.D.N.Y. 1999)..................................................................18

*In re Suprema Specialties, Inc. Sec. Litig.*,
   No. 02-168(WHW), 2008 WL 906254 (D.N.J. Mar. 31, 2008) ...........................9

*In re Synthroid*,
   264 F.3d 712 (7th Cir. 2001) .............................................................................18

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008)..................................................................4

*In re Vioxx Prod. Liab. Litig.*,
   MDL No. 1657, 2013 WL 5295707 (E.D. La. Sept. 18, 2013) ..........................16

*In re Warner Commc'ns Sec. Litig.*,
   618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986)...................12

*In re Xcel Energy, Inc. Sec. Litig.*,
   364 F. Supp. 2d 980 (D. Minn. 2005).............................................................8, 21

*In re Zonagen, Inc. Sec. Litig.*,
   322 F. Supp. 2d 764 (S.D. Tex. 2003) ...............................................................11

*Jenkins v. Trustmark Nat'l. Bank*,
   300 F.R.D. 291 (S.D. Miss. 2014) ............................................................ *passim*

*Johnson v. Georgia Highway Express*,
   488 F.2d 714 (5th Cir.1974), *overruled on other grounds by Blanchard v. Bergeron*,
   489 U.S. 87 (1989).................................................................................................3

*Jones v. Diamond*,
   636 F.2d 1364 (5th Cir. 1981), *overruled on other grounds by Int'l Woodworkers of*
   *Am., AFL-CIO & Its Local No. 5-376 v. Champion Int'l Corp.*, 790 F.2d 1174 (5th
   Cir. 1986) ...........................................................................................................14

*Kitson v. Bank of Edwardsville,*
   No. 08-507, 2010 WL 331730 (S.D. Ill. Jan. 25, 2010) ........................................................17

*Lindsey v. Memphis-Shelby Cty. Airport Auth.,*
   229 F.3d 1150 (6th Cir. 2000) .......................................................................................10

*Maher v. Zapata Corp.,*
   714 F.2d 436 (5th Cir. 1983) .........................................................................................9

*Prandini v. National Tea Co.,*
   557 F.2d 1015 (3d Cir. 1977)..........................................................................................8

*R2 Invs. LDC v. Phillips,*
   401 F.3d 638 (5th Cir. 2005) .......................................................................................10

*Schwartz v. TXU Corp.,*
   Case No. 3:02-CV-2243-K, 2005 WL 3148350 (N.D. Tex. Nov. 8, 2005).................... *passim*

*Shaw v. Toshiba Am. Info. Sys., Inc.,*
   91 F. Supp. 2d 942 (E.D. Tex. 2000).........................................................................6, 12

*Stoetzner v. U.S. Steel Corp.,*
   897 F.2d 115 (3d Cir. 1990)..........................................................................................17

*Streber v. Hunter,*
   221 F.3d 701 (5th Cir. 2000), *reh'g en banc denied,* 233 F.3d 576 (5th Cir. 2000) ..............12

*Taubenfeld v. AON Corp.,*
   415 F.3d 597 (7th Cir. 2005) .......................................................................................16

*Tellabs, Inc. v. Makor Issues & Rights. Ltd.,*
   127 S. Ct. 2499 (2007).................................................................................................2

*Turner v. Murphy Oil USA, Inc.,*
   472 F. Supp. 2d 830 (E.D. La. 2007).........................................................................17

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.,*
   669 F.3d 632 (5th Cir. 2012) ...............................................................................3, 4, 6

*Varljen v. H.J. Meyers & Co., Inc.,*
   No. 97 Civ. 6742, 2000 WL 1683656 (S.D.N.Y. Nov. 8, 2000) ...........................................20

*Walco Inv., Inc. v. Thenen,*
   975 F. Supp. 1468 (S.D. Fl. 1997)...............................................................................13

*Waters v. Int'l Precious Metals Corp.,*
   190 F.3d 1291 (11th Cir. 1999) ....................................................................................5

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
    §78u-4(a)(4) ............................................................................................................20
    §78u–4(a)(6) ..............................................................................................................4

Federal Rules of Civil Procedure
    Rule 26 ....................................................................................................................7

**OTHER AUTHORITIES**

Denise N. Martin, Vinita M. Juneja, Todd S. Foster, Frederick C. Dunbar, *Recent Trends
    IV: What Explains Filings and Settlements in Shareholder Class Actions?* at 12-13
    (NERA Nov. 1996) .................................................................................................5

## I.     INTRODUCTION

Lead Counsel[1] has succeeded in obtaining $7,850,000 in cash (the "Settlement") for the benefit of the Class in settlement of the above-captioned action (the "Action").  This is a highly favorable recovery in the face of substantial risk and is the result of Lead Counsel's vigorous, persistent, and skilled efforts.  In consideration of Lead Counsel's efforts and the excellent results achieved for Lead Plaintiff City of Omaha Police and Fire Retirement System ("Lead Plaintiff" or "Omaha Police and Fire") and the Class, Lead Counsel hereby applies for an award of attorneys' fees in the amount of 33 1/3% of the Settlement Fund and reimbursement of litigation expenses incurred in prosecuting this Action in the amount of $163,228.52. Concomitantly, Lead Plaintiff seeks a compensatory award of $5,000 as reimbursement for the costs and expenses incurred as a direct result of its representation of the Class.

For all the reasons set forth herein, and in the Declaration of Deborah Clark-Weintraub in Support of: (1) Motion for Final Approval of Class Action Settlement and Plan of Allocation of Settlement Proceeds; and (2) Application for Award of Attorneys' Fees and Expenses ("Weintraub Decl."), Lead Counsel respectfully submits that the requested attorneys' fees are fair and reasonable under the applicable standards and should, therefore, be awarded by the Court.  The costs and expenses requested by Lead Plaintiff and its Counsel are likewise reasonable in amount, and they were necessarily incurred in the successful prosecution of the Action.  Accordingly, they too should be approved.

## II.     FACTUAL AND PROCEDURAL HISTORY

The Weintraub Decl. is an integral part of this submission.  The Court is respectfully referred to it for a detailed description of the factual and procedural history of the litigation, the claims asserted, the work performed by Lead Counsel, the settlement negotiations, and the numerous risks and uncertainties presented in this litigation.

---

[1]      All capitalized terms not defined herein have the same meanings ascribed to them in the Stipulation of Settlement dated June 16, 2014 (the "Stipulation"), which was previously filed with the Court.  ECF No. 72-3.

## III.     THE COURT SHOULD APPROVE THE FEE REQUEST

### A.     Lead Counsel Is Entitled to Compensation Based upon the Benefits Created by the Litigation

The Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The Fifth Circuit and courts within this district have reached the same conclusion. *See Barton v. Drummond Co.,* 636 F.2d 978, 982 (5th Cir. 1981) ("[I]t is well settled that the 'common benefit' or 'common fund' equitable doctrine allows for the assessment of attorneys' fees against a common fund created by the attorneys' efforts."); *Burford v. Cargill, Inc*., Civil Action No. 05-0283, 2012 WL 5471985, at *2 (W.D. La. Nov. 8, 2012) (Hicks, J.); *In re Bayou Sorrel Class Action*, Case No. 6:04cv1101, 2006 WL 3230771 (W.D. La. Oct. 31, 2006) (Haik, J.).

Courts have also recognized that, in addition to providing just compensation, awards of attorneys' fees from a common fund serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons and to discourage future misconduct of a similar nature. *See Jenkins v. Trustmark Nat'l. Bank*, 300 F.R.D. 291, 307 (S.D. Miss. 2014) ("The doctrine serves the 'twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts.'")[2]; *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000) (stating that goal of awarding fees from common fund is to "'ensur[e] that competent counsel continue to be willing to undertake risky, complex, and novel litigation'"). Indeed, the Supreme Court has emphasized that private securities cases, such as this litigation, are "'an indispensable tool with which defrauded investors can recover their losses' – a matter crucial to the integrity of domestic capital markets." *Tellabs, Inc. v. Makor Issues & Rights. Ltd.*, 127 S. Ct. 2499, 2508 n.4 (2007). Accordingly,

---

[2]         Unless otherwise indicated, all citations are omitted and emphasis is added.

common fund fee awards of the type requested here encourage and support meritorious class actions and thereby promote private enforcement of, and compliance with, the federal securities laws.

**B.**     **The Court Should Award Attorneys' Fees Using the Percentage of Recovery Method**

"In common fund cases, courts typically use one of two methods for calculating attorneys' fees: (1) the percentage method, in which the court awards fees as a reasonable percentage of the common fund; or (2) the lodestar method, in which the court computes fees by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate and, in its discretion, applying an upward or downward multiplier." *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 642-43 (5th Cir. 2012). The Fifth Circuit has endorsed both approaches and it has afforded "district courts the flexibility to choose between the percentage and lodestar methods in common fund cases," with their analyses under either approach informed by the factors set forth in *Johnson v. Georgia Highway Express*, 488 F.2d 714, 717-19 (5th Cir.1974), *overruled on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989). *Id*. at 644.

"District courts in this Circuit regularly use the percentage method blended with a *Johnson* reasonableness check, and for some it is the 'preferred method.'" *Dell*, 669 F.3d at 643; *see also Schwartz v. TXU Corp.*, Case No. 3:02-CV-2243-K, 2005 WL 3148350, at *25 (N.D. Tex. Nov. 8, 2005) (collecting cases and stating that "the percentage method is widely used by district courts, including this one, throughout the Fifth Circuit in common fund cases"); *In re OCA, Inc. Sec. and Derivative Litig*., Civil Action No. 05-2165, 2009 WL 512081, at *18 (E.D. La. March 2, 2009) (collecting cases). "The percentage-of-recovery method is generally favored [over the lodestar method] in common fund cases because it allows courts to award fees from the fund 'in a manner that rewards counsel for success and penalizes it for failure.'" *In re Rite Aid Corp. Sec. Litig*., 396 F.3d 294, 300 (3d Cir. 2005); *Gunter*, 223 F.3d at 195. In addition to "align[ing] the interests of class counsel with those of the class members," the percentage

3

method also "allows for easy computation." *Dell*, 669 F.3d at 643. Conversely, the lodestar "method has been called 'difficult to apply, time-consuming to administer, inconsistent in result, and capable of manipulation.'" *OCA*, 2009 WL 512081, at *18 (quoting MANUAL ON COMPLEX LITIGATION (4th) §14.121); *Schwartz v. TXU Corp.*, 2005 WL 3148350, at *25 ("Numerous courts and commentators have stated that the percentage method is vastly superior to the lodestar method for a variety of reasons, including an incentive for counsel to 'run up the bill' and the heavy burden that calculation under the lodestar method places upon the court.").[3]

Finally, it is important to note the "near-universal adoption of the percentage method in securities cases" such as this one following the passage of the Private Securities Litigation Reform Act of 1995 ("PSLRA"). *Dell*, 669 F.3d at 643. Specifically, the PSLRA states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. §78u–4(a)(6). "[B]ased on this statutory language, the percentage method is the preferred method for calculating attorneys' fees in securities actions." *OCA*, 2009 WL 512081, at *19; *Dell*, 669 F.3d at 643.[4] Nevertheless, "courts often perform the lodestar analysis as a cross-check on the percentage method." *OCA*, 2009 WL 512081, at *19 (collecting cases); *Evans v. TIN, Inc*., Civil Action No. 11-2067, 2013 WL 4501061, at *6 (E.D. La. Aug. 21, 2013) (Afrik, J.) ("The Court will also conduct a rough lodestar cross check as is the customary practice to ensure that the requested amount of attorney's fees is reasonable.").

---

[3]     *See also* Report of Third Circuit Task Force: Court Awarded Attorney Fees, 108 F.R.D. 237, 246-49 (1985) (identifying a number of deficiencies with the lodestar method, including: (1) increasing the workload of the judicial system; (2) lack of objectivity; (3) a sense of mathematical precision unwarranted in terms of the realities of the practice of law; (4) ease of manipulation by judges who prefer to calculate the fees in terms of percentages of the settlement fund; (5) encouraging duplicative and unjustified work; (6) discouraging early settlement; (7) not providing judges with enough flexibility to award or deter lawyers so that desirable objectives, such as early settlement, will be fostered; (8) providing relatively less monetary reward to the public interest bar; and (9) confusion and unpredictability in administration.); *In re Educ. Testing*, 447 F. Supp. 2d 612, 628-69 (E.D. La. 2006) (Vance, J.) (discussing the pervasive criticism of the lodestar method of calculating attorneys' fees).

[4]     *See also In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 188 n.7 (3d Cir. 2005) ("the PSLRA has made percentage-of-recovery the standard for determining whether attorneys' fees are reasonable"); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 586 (S.D.N.Y. 2008) ("Congress plainly contemplated that percentage-of-recovery would be the primary measure of attorneys' fees awards in federal securities class actions.").

Given the fact that this securities class action is a "'paradigmatic common fund' case" (*In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 852, 860 (W.D. Pa. 1995)), Lead Counsel respectfully submits that the Court should apply the percentage-of-fund method, cross-checked against the lodestar.  *OCA*, 2009 WL 512081, at *19.

### C.     An Award of 33 1/3% Is Appropriate Under the Percentage of the Fund Method

"Under [the percentage] method, the Court is first required to determine the actual monetary value conferred to the class members by the settlement." *Burford*, 2012 WL 5471985, at *1.  "'The court then sets the benchmark percentage to be applied to this value.'" *Id*.  "After setting the benchmark, the Court applies the *Johnson* factors to 'determine whether a positive or negative adjustment of the benchmark is warranted.'" *Id*.

The monetary value of the settlement is $7,850,000 in cash, plus interest earned from August 18, 2014, the date the settlement funds were deposited in the escrow account. Stipulation, ¶¶1.25-1.26.  "While there is no general rule as to what constitutes a reasonable percentage of a common fund, 'district courts in the Fifth Circuit have awarded percentages of approximately one-third contingency fee.'" *Burford*, 2012 WL 5471985, at *1 (quoting *In re Combustion, Inc.*, 968 F. Supp. 1116, 1133 (W.D. La. 1997)); *Jenkins*, 300 F.R.D. at 307 ("'it is not unusual for district courts in the Fifth Circuit to award percentage of approximately one third'").[5]  Moreover, this Court has recently set the "benchmark percentage" at, and awarded, one third of the common fund.  *Burford*, 2012 WL 5471985, at *2; *see also Bayou Sorrel*, 2006

---

[5]      *See also* Denise N. Martin, Vinita M. Juneja, Todd S. Foster, Frederick C. Dunbar, *Recent Trends IV: What Explains Filings and Settlements in Shareholder Class Actions?* at 12-13 (NERA Nov. 1996) (surveying data from 433 securities class actions and concluding that: "[r]egardless of case size, fees average approximately 32 percent of the settlement."), Weintraub Decl., Ex. A; *TXU Corp.*, 2005 WL 3148350, at *31 ("The vast majority of Texas federal courts and courts in this District have awarded fees of 25%–33% in securities class actions."); *In re Prudential-Bache Energy Income P'ships Secs. Litig.*, MDL No. 888, 1994 WL 150742, at *1-*2, *4 (E.D. La. April 13, 1994) (listing awards in cases from Eastern District of Louisiana and noting that awards in common fund cases have historically been in the 25% to 33% range and awards were intended to approximate what private counsel ordinarily would charge in a contingent fee contract); *OCA*, 2009 WL 512081, at *19 (setting benchmark of 27% in securities case based on review of cases and empirical data of similar cases, and awarding 28.5%); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) (approving fee award where the district court determined that the benchmark should be 30% and then adjusted the fee award higher in view of the circumstances of the case).

WL 3230771, at *7 (awarding 36% of the common fund); *In re Combustion, Inc.*, 968 F. Supp. at 1156 (W.D. La. 1997) (awarding fee of 36% of $127 million settlement).

Accordingly, there is ample precedent from courts within the Fifth Circuit and this district, as well as empirical evidence, to support the requested fee. *See Jenkins*, 300 F.R.D. at 307 (awarding one third of the settlement fund); *TXU Corp.*, 2005 WL 3148350, at *27 (collecting cases and stating that "courts throughout this Circuit regularly award fees of 25% and *more often 30% or more* of the total recovery under the percentage-of-the recovery method."); *Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 972 (E.D. Tex. 2000) ("based on the opinions of other courts and the available studies of class action attorneys' fees awards (such as the NERA study), this Court concludes that attorneys' fees in the range from twenty-five percent (25%) to thirty-three and thirty-four one-hundredths percent (33.34%) have been routinely awarded in class actions. *Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery*.").

### D.     Application of the *Johnson* Factors Supports Lead Counsel's Request for a 33 1/3% Fee

In *Johnson*, the Fifth Circuit stated that the district court should consider several factors in setting a fee award.  These twelve *Johnson* factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal service adequately; (4) the preclusion of other employment by the attorney because he accepted this case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Dell*, 669 F.3d at 642 n.25.  "The relevance of each of the *Johnson* factors will vary in any particular case, and, rather than requiring a rigid application of each factor, the Fifth Circuit has left it to the lower court's discretion to apply those factors in view of the circumstances of a particular case." *TXU Corp.*, 2005 WL 3148350, at *28; *see also In re Catfish Antitrust Litig.*,

939 F. Supp. 493 (N.D. Miss. 1996) ("not every [Johnson] factor need be necessarily considered").

As demonstrated below, each of the relevant *Johnson* factors weighs in favor of the requested fee.

### 1. The Time and Labor Required

As detailed herein and in the Weintraub Decl., Lead Counsel litigated the Action for nearly two years. In the course of the litigation, Lead Counsel: (a) conducted a detailed investigation of potential claims against LHC Group, Inc. ("LHC" or the "Company") and Individual Defendant Keith G. Myers ("Myers") that resulted in the filing of the original complaint; (b) moved, pursuant to the PSLRA and on behalf of Omaha Police and Fire, for appointment of Lead Plaintiff and Lead Counsel; (c) oversaw detailed investigative interviews of numerous confidential witnesses, including former employees of LHC; (d) prepared a detailed amended complaint; (e) successfully opposed Defendants' comprehensive motion to dismiss; (f) successfully opposed Defendants' attempt to seek interlocutory appeal of the Court's decision on the motion to dismiss; (g) drafted Freedom of Information Act ("FOIA") requests to the Securities and Exchange Commission ("SEC") and the Office of Inspector General, Department of Health and Human Services ("OIG HHS"); (h) received and reviewed over 137,000 pages of documents produced by Defendants and the SEC; (i) prepared the initial disclosures required by Fed. R. Civ. P. 26; (j) drafted comprehensive requests for production of documents to Defendants; (k) responded to Defendants' requests for production and interrogatories; (l) engaged in multiple meet-and-confer teleconferences regarding the scope of discovery; and (m) consulted extensively with experts and consultants in the fields of economics and damages Weintraub Decl., ¶¶4, 46.

The process by which this Action was resolved was also lengthy and involved. Settlement was only reached after Lead Counsel prepared two comprehensive mediation briefs, attended a full-day mediation, and had numerous follow-up communications with the mediator. Lead Counsel then spent weeks negotiating the specific terms of the settlement agreement. The

efforts that were required to complete these tasks were extensive and represented an immense risk, given the contingency-based nature of Lead Counsel's representation.  *See* Weintraub Decl., ¶¶4-5.  To date, Plaintiff's Counsel has spent 2,141.2 hours litigating this case.  Scott Decl., ¶5; Lemmon Decl., ¶5.[6]  Plaintiff's Counsel has also incurred $163,228.52 in, as yet, unreimbursed litigation expenses.  Scott Decl., ¶6; Lemmon Decl., ¶6.

In addition, the timing of the Settlement itself is a benefit that Lead Counsel has conferred on the Class.  Achieving a beneficial outcome for the Class at this stage of the litigation, following a substantial investigation of the Company, prevailing on the motion to dismiss under the heightened pleading standard of the PSLRA, and the commencement of formal merits discovery, but prior to summary judgment and trial, weighs in favor of awarding the requested fee.  *See TXU Corp.*, 2005 WL 3148350, at *29 (efficiency and effectiveness should be rewarded; awarding fee requested where action settled while motion to dismiss pending) (citing *In re Xcel Energy, Inc. Sec. Litig.,* 364 F. Supp. 2d 980, 983 (D. Minn. 2005) (early settlements are consistent with the purposes of the Federal Rules of Civil Procedures)); *Di Giacomo v. Plains All Am. Pipeline,* No. Civ.A. H-99-4137, 2001 WL 34633373, at *11 (S.D. Tex. Dec. 19, 2001) (an emphasis on the number of hours would penalize counsel for obtaining early settlement); *see also Prandini v. National Tea Co.*, 557 F.2d 1015, 1019 n.5 (3d Cir. 1977), *on remand*, 80 F.R.D. 447 (W.D. Pa. 1978) ("'One thousand plodding hours may be far less productive than one imaginative, brilliant hour.'").  As such, the Court should find that a settlement at this stage benefits the Class, and that the labor and time Lead Counsel invested in this case supports the requested fee.

### 2.    Novelty and Difficulty of the Issues

The second *Johnson* factor also favors granting Lead Counsel's request for attorneys' fees.  As a general matter, securities litigation is "'notoriously difficult and unpredictable.'"

---

[6]     Declaration of Daryl F. Scott in Support of Scott+Scott, Attorneys at Law, LLP's Application for Award of Attorneys' Fees and Reimbursement of Expenses ("Scott Decl.") and Declaration of Andrew A. Lemmon in Support of The Lemmon Law Firm's Application for Award of Attorneys' Fees and Reimbursement of Expenses ("Lemmon Decl."), both filed concurrently herewith.

*Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983); *see also In re Suprema Specialties, Inc. Sec. Litig.*, No. 02-168(WHW), 2008 WL 906254, at *11 (D.N.J. Mar. 31, 2008) ("[T]his case's complexity is undeniable, given its facts and area of law, securities law.").  Even before passage of the PSLRA, courts had noted that "a securities case, by its very nature, is a complex animal." *Clark v. Lomas & Nettleton Fin. Corp.*, 79 F.R.D. 641, 654 (N.D. Tex. 1978), *vacated on other grounds*, 625 F.2d 49 (5th Cir. 1980).  Following passage of the PSLRA, securities class actions have only become more difficult to prosecute.  This is especially true in the Fifth Circuit.  *See TXU Corp.*, 2005 WL 3148350, at *32 (finding approximately 90% of Fifth Circuit PSLRA pleading decisions have upheld dismissal of complaints and recognizing case was risky when lead counsel accepted retention); *OCA*, 2009 WL 512081, at *21 ("Moreover, Fifth Circuit decisions on causation, pleading and proof at the class certification stage make PSLRA claims particularly difficult in this circuit.").  In addition, as described below, this Action involved complex issues of law and fact arising from allegations of misrepresentations and omissions regarding LHC's business practices.

### a.       Proving Liability Would Be Difficult

Lead Plaintiff bears the burden of establishing each of the elements of the claims brought against Defendants under the Securities Exchange Act of 1934.  Although Lead Plaintiff believes that the allegations of the Complaint would ultimately translate into a strong case for liability, Lead Plaintiff is also aware that many risks were involved in proving its §§10(b), 20(a), and 20A claims.  *See TXU Corp.*, 2005 WL 3148350, at *29 ("Federal Securities class action litigation is notably difficult and notoriously uncertain.").  Indeed, Lead Plaintiff faced numerous hurdles to establishing liability.  These legal challenges included establishing that Defendants made misstatements or omissions of material fact during the alleged Class Period, that Defendants acted with scienter, and the need to prove loss causation.  Post-PSLRA rulings make clear that the risk of failing to establish these elements – and receiving no recovery at all – has increased exponentially since the PSLRA was adopted in 1995.  *See In re Ikon Office Solutions, Inc. Sec. Litig. ,* 194 F.R.D. 166,  194 (E.D. Pa. 2000) ("securities actions have become more difficult

from a plaintiff's perspective in the wake of the PSLRA"); *see also Goldstein v. MCI Worldcom,* 340 F.3d 238 (5th Cir. 2003) (affirming dismissal with prejudice of securities fraud class action complaint against Bernard Ebbers and Worldcom involving a massive securities fraud with a $685 million write-off of accounts receivable, for which Ebbers was later convicted).

As detailed in the Weintraub Decl., Defendants vigorously asserted that LHC did not make misstatements. Weintraub Decl., ¶52. Defendants also argued that Lead Plaintiff would be unable to establish loss causation. *Id.* at ¶54. Even if Lead Plaintiff succeeded in dismantling these defenses, it would still be required to prove that Defendants issued the alleged false and misleading statements intentionally or with reckless disregard. Simply put, establishing these elements would be a substantial hurdle. *See Bergquist v. FyBX Corp.,* No. Civ. A. 02-722, 2003 WL 22081368, at *10-*11 (E.D. La. Aug. 29, 2003) (granting summary judgment to defendants, dismissing federal securities claims); *see also In re Indep. Energy Holdings PLC Sec. Litig.,* No. 00 Civ 6689, 2003 WL 22244676, at *8 (S.D.N.Y. Sept. 29, 2003) (noting difficulty of proving scienter); *R2 Invs. LDC v. Phillips,* 401 F.3d 638, 643 (5th Cir. 2005) ("We have defined scienter as. . . 'severe recklessness in which the danger of misleading buyers or sellers is either known to the defendant or is so obvious that the defendant must have been aware of it' . . . 'that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care.'"); *In re Seitel, Inc. Secs. Litig.*, 245 F.R.D. 263, 278 (S.D. Tex. 2007) (denying class certification based on a failure to demonstrate loss causation).

### b.    Obtaining Class Certification and Proving Causation and Damages Would Be Difficult

To prevail, Lead Plaintiff would be required to obtain class certification and prove that the Defendants' false and misleading statements inflated the price of LHC's common stock. Lead Plaintiff would also be required to prove the amount of the artificial inflation. *See Lindsey v. Memphis-Shelby Cty. Airport Auth.,* 229 F.3d 1150 (6th Cir. 2000) (highlighting risk of proving damages in assessing and approving settlement). In addition, at any trial, the Defendants would each vigorously contest damages, which Defendants claim to be small, if they exist at all.

Lead Counsel, with the assistance of their damages expert, preliminarily estimated that the Class's provable damages attributable to the alleged wrongdoing were in the range of $76 million-$106 million. However, these figures are based on Lead Counsel's theory of liability *and assume that every element of the Class's liability and damages theories are accepted by the jury as being correct and recoverable,* which Defendants vigorously dispute. Thus, the viability of these preliminary estimates as an actual calculation for damages could be affected by many factors that arise in the litigation, including Defendants' rebuttals and defenses to Lead Plaintiff's damage calculations and expert testimony.

At the class certification, summary judgment, and trial stages, Defendants would present alternative models to those presented by Lead Plaintiff for each of the following damages issues: (a) the appropriate economic model for determining the amounts by which LHC common stock allegedly was artificially inflated (if at all) during the Class Period; (b) the amounts by which LHC common stock allegedly was artificially inflated (if at all) during the Class Period; (c) the effect of various market forces influencing the trading prices of LHC common stock at various times during the Class Period; and (d) the extent to which the various matters that Lead Plaintiff alleges were materially false or misleading influenced (if at all) the trading prices of LHC common stock at various times during the Class Period.

The presentation of all of this evidence regarding damages generally, market causation, and the disentanglement of competing explanations, are complex matters which would require the presentation of expert testimony at the class certification, summary judgment and trial phases of the case. *See Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398 (2014) (holding that defendants may rebut the presumption of reliance at the class certification stage by showing that the alleged misrepresentations did not impact the stock price). While Lead Counsel believes that there exists a firm basis for an expert to opine on the measure and amount of total damages, substantial obstacles, in addition to the questions raised above, remain. For example, the Court would have to determine that Lead Plaintiff's damages model is admissible. *See In re Zonagen, Inc. Sec. Litig.*, 322 F. Supp. 2d 764, 782 (S.D. Tex. 2003) (granting summary judgment where

plaintiff's expert report was insufficient to establish loss causation as a matter of law).  Only then would a jury be able to determine whether Lead Plaintiff's or Defendants' model is more accurate.  It is then possible that, in the unavoidable "battle of experts," a jury might disagree with the Class' expert, or merely find Defendants' expert more persuasive.  *See, e.g.*, *Streber v. Hunter*, 221 F.3d 701, 726 (5th Cir. 2000), *reh'g en banc denied,* 233 F.3d 576 (5th Cir. 2000) (stating jury can believe whichever expert it finds more credible); *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) ("In this 'battle of experts,' it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad non actionable factors such as general market conditions.").  Consequently, "[a]lthough Plaintiffs maintain they would likely be successful on the merits at trial," the complicated nature of the case and uncertainty of prevailing supports approval of the settlement.  *Shaw*, 91 F. Supp. 2d at 960.

### 3.   Skill Required: the Experience, Reputation, and Ability of the Attorneys

The third and the ninth *Johnson* factors, the skill required and the experience, reputation, and ability of the attorneys, also support the requested fee award.  Lead Counsel has many years of experience in complex federal civil litigation, particularly the litigation of shareholder, securities, and other class actions.  *See* Scott Decl., Exhibit A.  Scott+Scott's experience allowed it to obtain significant investigative materials in spite of the PSLRA's  barriers to obtaining formal discovery, identify the complex issues involved in this case, and formulate strategies to prosecute it effectively.  *See TXU*, 2005 WL 3148350, at *30 ("Lead Plaintiffs' counsel demonstrated that notwithstanding the barriers erected by the PSLRA, they would develop evidence to support a convincing case.").  Furthermore, during the settlement negotiations, Lead Counsel demonstrated a willingness to continue the litigation rather than accept a settlement that was not in the best interests of Lead Plaintiff and the Class.  Based upon Lead Counsel's diligent

efforts, and their skill and reputations, Lead Counsel was able to negotiate a very favorable result.

It is also important to recognize that Defendants were represented by highly experienced lawyers from prominent and well-respected law firms.  The standing of opposing counsel should be weighed in determining the fee, because such standing reflects the challenge faced by Lead Plaintiff's attorneys.  The ability of Lead Counsel to obtain such a favorable settlement for Lead Plaintiff and the Class in the face of such formidable legal opposition confirms the superior quality of their representation.  Accordingly, this factor also supports the requested percentage. *See Walco Inv., Inc. v. Thenen*, 975 F. Supp. 1468, 1472 (S.D. Fl. 1997) (explaining that "[g]iven the quality of defense counsel from prominent national law firms, the Court is not confident that attorneys of lesser aptitude could have achieved similar results"); *Billitteri v. Sec. Am., Inc.*, No. 11-cv-00191, 2011 WL 3585983, at *7 (N.D. Tex. Aug. 4, 2011) ("[B]ecause of the extremely effective work of opposing counsel . . . .  The skill required here . . . certainly justifies the contemplated award.").

### 4.     The Preclusion of Other Employment

As previously noted, Plaintiff's Counsel spent 2,141.2 hours litigating this case on behalf of Lead Plaintiff and the Class.[7]  Scott Decl., ¶5; Lemmon Decl., ¶5.  This is time counsel could have devoted to other matters.  Accordingly, this factor further supports the requested fee.  *See Burford*, 2012 WL 5471985, at *3  ("The affidavits of Class Counsel prove that while this case did not preclude them from accepting other work, they were often times precluded from working on other cases due to the demands of the instant matter . . . .  This factor weighs in favor of a substantial fee award.").

### 5.     The Customary Fee for Similar Work in the Community

"In the Western District of Louisiana, the customary contingency fee for representation of plaintiffs 'ranges from 33 1/3% to 50% of the gross award plus costs for cases requiring the

---

[7]     If the Settlement is approved, additional time will be spent ensuring that the Settlement is properly distributed to the Class.

institution and prosecution of litigation.'" *Burford*, 2012 WL 5471985, at *3 (quoting *In re Bayou Sorrel Class Action*, Case No. 6:04–1101, 2006 WL 3230771, at *5 (W.D. La. Oct. 31, 2006)). "Thus, this factor supports approval of the one-third fee, which is a substantial award." *Id*.

### 6.      Whether the Fee Is Fixed or Contingent

Lead Counsel undertook this class action on a contingency-fee basis. Thus, for over two years, Lead Counsel carried both the substantial out-of-pocket costs of litigation and the risk of not being paid for their services or reimbursed for their out-of-pocket costs in connection with the litigation. Contingency risk alone is a factor supporting the requested fee. As the Fifth Circuit has stated, "[l]awyers who are to be compensated only in the event of victory expect and are entitled to be paid more when successful than those who are assured of compensation regardless of result." *Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir. 1981), *overruled on other grounds by Int'l Woodworkers of Am., AFL-CIO & Its Local No. 5-376 v. Champion Int'l Corp.*, 790 F.2d 1174 (5th Cir. 1986).

Further, the risk of loss in this case was not illusory. As discussed above, securities fraud cases are extremely complicated, subject to the heightened pleading standard of the PSLRA, and success is never assured – especially in the Fifth Circuit. *See Goldstein v. MCI WorldCom*, 340 F.3d 238 (5th Cir. 2003); *OCA*, 2009 WL 512081, at *21 ("Early on, counsel faced a significant risk that the case would be dismissed given the Fifth Circuit jurisprudence regarding the pleading of scienter under the PSLRA."). This case was no different. Lead Counsel faced significant challenges in terms of establishing liability and damages. *See* Weintraub Decl., ¶¶51-59; and Lead Plaintiff's Memorandum of Law in Support of Motion for Final Approval of Class Action Settlement, §§3(D) and 3(F). Had Plaintiffs won at trial, there was still the risk of loss on appeal. *See In re BankAtlantic Bancorp, Inc. Sec. Litig.*, No. 07-61542-Civ., 2011 WL 1585605 (S.D.

Fla. Apr. 25, 2011) (granting judgment as a matter of law for defendants after jury returned verdict for plaintiffs).[8]

Despite the risk that Lead Counsel's significant time and effort could go uncompensated, Lead Counsel diligently prosecuted the Class's claims.  Consequently, this factor weighs in favor of approving Lead Counsel's fee request.  *See Jenkins*, 300 F.R.D. at 309.

### 7.    Time Limitations Imposed by the Client or the Circumstances

This factor does not pertain to this case.

### 8.    The Amount Involved and the Results Obtained

As discussed above, assuming that every element of the Class's liability and damage theories were accepted by the jury as being correct and recoverable, a preliminary damage study determined that the ***maximum*** recovery would be in the range of $76 million-$106 million. Thus, Lead Counsel has recovered approximately 7.4%-10.3% of the class's maximum provable damages, and far more than the damages Defendants asserted the Class suffered (*i.e.,* $0) given their belief that Lead Plaintiff would be unable to demonstrate, among other things, falsity, scienter, or loss causation.  *See* Weintraub Decl., ¶¶51-54.  In light of the many aforementioned risks involved in this litigation, this is an excellent result.  *See In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 804 (S.D. Tex. 2008) ("The typical recovery in most class actions generally is three-to-six cents on the dollar.").

### 9.    The Undesirability of the Case

Securities class action cases carry with them elevated risks, a requirement of lengthy investigation through informal discovery, high out-of-pocket costs, and a possibility of no recovery, all of which speak to the undesirability of such a case.  *See Di Giacomo*, 2001 WL

---

[8]        *See also Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning securities fraud class action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 on the basis of 1994 Supreme Court opinion); *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (where the class won a substantial jury verdict and motion for judgment N.O.V. was denied; on appeal, the judgment was reversed and the case was dismissed – after 11 years of litigation); *Geffon v. Micrion Corp.*, 249 F.3d 29 (1st Cir. 2001); *Greebel v. FTP Software, Inc.*, 194 F.3d 185 (1st Cir. 1999); *Green v. Nuveen Advisory Corp.*, 295 F.3d 738 (7th Cir. 2002); *In re Apple Computer Sec. Litig.*, No. C-84-20148(A)-JW, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991) (rendering verdict against two individual defendants, but vacating judgment on motion for judgment notwithstanding the verdict).

34633373, at *12; *see also Garza v. Sporting Goods Properties, Inc.*, No. Civ. A. SA-93-CA-108, 1996 WL 56247, at *33 (W.D. Tex. Feb. 6, 1996) (factors such as financial burden on counsel and time demands of litigating large, complex class action have caused such cases to be considered "undesirable"). Furthermore, as the court recognized in *Di Giacomo,* the quality and number of attorneys who file suit (and fight for their client to be the lead plaintiff) in a case such as this is also an indication such cases are usually highly desirable. Here, there was only one case filed, and only one lead plaintiff movant. *A fortiori*, this factor weighs in favor of the requested fee award.

### 10.   The Nature and Length of the Professional Relationship with the Client

Lead Counsel have represented Lead Plaintiff since at least 2009, and in this litigation since its inception. Weintraub Decl., ¶22. Lead Plaintiff has been actively involved in this litigation and approved and supports the Settlement. *See* Declaration of Lead Plaintiff City of Omaha Police and Fire Retirement System in Support of Final Approval of Settlement and Application for Reimbursement of Costs and Expenses ("Omaha Decl."), ¶¶4-5.

### 11.   Awards in Similar Cases

As discussed above, the requested fee of 33 1/3% is consistent with awards granted in class action cases. Hence, this factor supports the requested fee award.[9]

---

[9]     *See In re Shell Oil Refinery*, 155 F.R.D. 552 (E.D. La.1993) (awarding "1/3 in fees from a settlement fund of $170,000,000"); *In re Combustion*, 968 F. Supp. at 1136, 1142 (awarding 36% on a settlement fund of $127,396,000); *Teichler v. DSC Commc'ns Corp*., CA 3–85–2005–T (N.D. Tex. Oct. 22, 1990) ("plaintiffs' counsel awarded $10 million on a settlement of $30 million in securities class action") (cited in *In re Catfish Antitrust Litig.*, 939 F. Supp. at 500); *Kleinman v. Harris*, Civil Action No. 3:89–CV–1869–X (N.D. Tex. June 21, 1993) ("approving fee of approximately one-third of benefit achieved of $1,170,000") (cited in *In re Catfish Antitrust Litig.*, 939 F. Supp. at 500); *Faircloth v. Certified Fin. Inc.*, No. Civ. A. 99-3097, 2001 WL 527489, at *9 (E.D. La. May 16, 2001) (awarding 33.34% on a $1,534,321 settlement fund); *In re Vioxx Prod. Liab. Litig*., MDL No. 1657, 2013 WL 5295707, at *4-*5 (E.D. La. Sept. 18, 2013) (awarding 33%); *Barrera v. Nat'l Crane Corp*., No. SA-10-CV-0196, 2012 WL 242828, at *5 (W.D. Tex. 2012) (awarding one-third); *Finkel v. Docutel/Olivetta Corp*., CA3–84–0566–T (N.D. Tex. Feb. 23, 1990) ("awarding fees amounting to 33% of settlement fund") (cited in *In re Catfish Antitrust Litig.*, 939 F. Supp. at 500); *In re Lomas Fin. Corp. Sec. Litig*., No. CA–3–89–1962–G (N.D.Tex. Jan. 28, 1992) ("approving fee of almost one-third of benefit") (cited in *In re Combustion*, 968 F. Supp. at 1139); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) (upholding award of 33.3% of $1.725 million settlement); *In re Pacific Enter. Sec. Litig.,* 47 F.3d 373, 379 (9th Cir. 1995) (affirming award of 33% of $12 million common fund); *Taubenfeld v. AON Corp*., 415 F.3d 597 (7th Cir. 2005) (upholding award of one-third of $7.25 million settlement fund in securities class action); *In re Heritage Bond Litig.*, No. 02-ML-1475, 2005 WL 1594389, at *1 (C.D. Cal. June 10, 2005) (awarding one-third of $27.783 million settlement); *In re Public Serv. Co. of New Mexico*, No. 91-

16

In sum, the eleven *Johnson* factors support Lead Counsel's request for one third of the settlement fund as attorneys' fees.   The percentage method, backed by the *Johnson* factors, therefore supports the granting of Lead Counsel's requested fees.[10]

### E.    A Lodestar Cross-Check Confirms the Reasonableness of the Requested Fee

In addition to applying the percentage approach to determine attorneys' fees in common fund cases like this one, courts in this Circuit often apply the lodestar method as a "rough cross-check" to confirm that the fee determined under the percentage approach is reasonable.  *See Evans,* 2013 WL 4501061, at *6; *Burford*, 2012 WL 5471985, at *6 n.1.  The lodestar cross-check, while useful, should not displace a district court's primary reliance on the percentage-of-recovery method.  *See id.* (using the lodestar cross-check to control against "windfall fees" and to verify the reasonableness of the award calculated under the percentage method).  The lodestar multiplier is calculated by dividing the attorneys' fees that class counsel seeks by class counsel's associated lodestar.  *See id.*  In performing a lodestar analysis, a district court may rely on summaries submitted by the attorneys and need not review actual billing records.  *See Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 859-61 (E.D. La. 2007) ("The lodestar cross-check calculation need entail neither mathematical precision nor bean counting.  For example, a court

---

0536M, 1992 WL 278452, at *12 (S.D. Cal. July 28, 1992) (awarding one-third of common fund); *Kitson v. Bank of Edwardsville*, No. 08-507, 2010 WL 331730, at *2 (S.D. Ill. Jan. 25, 2010) (awarding 33% of $3,415,000 settlement fund); *Antonopulos v. N. Am. Thoroughbreds. Inc.*, No. 87-0979, 1991 WL 427893, at *4 (S.D. Cal. May 6, 1991) (awarding one-third of common fund); *In re DrKoop.com,* No. 00-CA-427-JRN, Order and Final Judgment, ECF No. 48 (W.D. Tex. Nov. 14, 2001) (fee equal to 33-1/3% of total recovery, plus expenses); *Levitin v. A Pea in the Pod, Inc.,* No. 3:94-CV-0247, Final Judgment and Order of Dismissal With Prejudice, ECF No. 213 (N.D. Tex. Mar. 27, 1998) (fee award equal to 40% of recovery, plus expenses); *Branca v. First USA Paymentech, Inc.*, No. 3:97-CV-2507-L, Order and Final Judgment, ECF No. 59 (N.D. Tex. Jan. 4. 2001) (fee equal to 33-1/3% of total recovery, plus expenses).

[10]       Although not a *Johnson* factor, many courts have recognized that the absence, or a minimal number, of objections to a fee request is significant evidence that the requested fee is fair.  *See Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 119 (3d Cir. 1990) (even when 29 members of a 281 person class (*i.e.*, 10% of the class) objected, the response of the class as a whole "strongly favors [the] settlement"); *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 515 (W.D. Pa. 2003) ("the absence of substantial objections by other class members to the fee application supports the reasonableness of Lead Counsels' request").  Although the date for filing objections is November 4, 2014, Lead Counsel is not aware of any objections to the fee request or Settlement as of the date of this filing.

performing a lodestar cross-check need not scrutinize each time entry; reliance on representations by class counsel as to total hours may be sufficient . . . .").

Here, the cumulative number of hours expended by Lead Counsel is approximately 2,141.2, and the resulting lodestar for the services performed is $1,225,920.50.[11] The requested fee thus equates to a multiplier of 2.13. This is well within the range of reasonableness, because multipliers of "1 to 4 [are] typically approved by courts within [the Fifth] circuit" *Burford*, 2012 WL 5471985, at *6 n.1; *Di Giacomo*, 2001 WL 34633373, at *11 (stating same and approving 5.3 multiplier); *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 399 (S.D.N.Y. 1999) ("[I]n recent years multipliers of between 3 and 4.5 have been common' in federal securities cases."). Accordingly, the attorneys' fees sought are plainly reasonable using a lodestar cross-check.

## IV. LEAD COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED

An attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund. *See Ikon*, 194 F.R.D. at 192; *In re Synthroid*, 264 F.3d 712, 722 (7th Cir. 2001). To be reimbursable, the expenses must be "adequately documented and reasonably and appropriately incurred in the prosecution of the class action." *See In re Safety Components, Inc. Sec. Litig.,* 166 F. Supp. 2d 72, 108 (D.N.J. 2001).

Here, Lead Counsel expended $163,228.52 in out-of-pocket costs, which are divided into categories and itemized in the declarations submitted by each individual firm. *See* Scott Decl., ¶6; Lemmon Decl., ¶6. These expenses are well-documented, based on the books and records maintained by each firm, and reflect the costs of prosecuting this litigation. They include, among

---

[11]    *See* Scott Decl., ¶¶5-6; Lemmon Decl., ¶¶5-6. Moreover, the rates charged by Lead Counsel have recently been submitted in conjunction with a percentage of the fund fee request in another securities case so that the court could perform a lodestar crosscheck and the court awarded the full one third fee requested. *See Underland v. Alter*, Case No. CIV.A. 10-3621, Final Approval Order and Judgment of Dismissal with Prejudice, ECF No. 220 (E.D. Pa. Sept. 8, 2014); *see also Di Giacomo*, 2001 WL 34633373, at *10 (approving hourly rates *in 2001* for attorneys ranging from a high of $615 per hour to a low of $200 per hour for an associate lawyer, and legal assistants, whose hourly rates ranged from $50 to $150, and stating: "Both sides were represented by well known law firms with sophisticated lawyers, and their rates reflect the specialized nature of this type of litigation.").

other things, fees for experts; costs associated with creating and maintaining an electronic document database; online legal research costs; travel and lodging expenses; copying; mail; telephone; and deposition transcripts.  Reimbursement of similar expenses is routinely permitted. *See Jenkins*, 300 F.R.D. at 310-11 (approving reimbursement of $181,213.18 in litigation consisting of: (1) $168,600 in fees and expenses for experts; (2) $9,738.35 in travel costs; and (3) $2,874.83 in administrative expenses (*i.e.*, filing and court fees, PACER charges, copies, postage, delivery fees, and similar expenses)); *In re Remeron End-Payor Antitrust Litig.,* No. Civ. 02-2007, 2005 WL 2230314, at *32 (D.N.J. Sept. 13, 2005) (approving reimbursement of "costs expended for purposes of prosecuting this litigation, including substantial fees for experts; substantial costs associated with creating and maintaining an electronic document database; travel and lodging expenses; copying costs; and the costs of deposition transcripts"); *In re Am. Bus. Fin. Services Inc. Noteholders Litig.,* No. 05-232, 2008 WL 4974782, at *18 (E.D. Pa. Nov. 21, 2008) (approving reimbursement of expenses for "delivery and freight, class notice costs, duplication costs, online legal research, travel, meals, experts, telephone, fax services, transcripts, postage, messenger, mediator, filing and court fees, service fees, [and] transportation" based on declarations of counsel).

Additionally, the Notice of Class Action Settlement informed Class Members that Lead Counsel would seek reimbursement of expenses up to $172,000, and, to date, no objection to the expense application has been filed.  The requested expenses should, therefore, be awarded.  *See In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 736 (E.D. Pa. 2001) ("plaintiffs seek reimbursement of expenses . . . which they have detailed in their submissions to us.  These out-of-pocket expenses . . . are compensable . . . they are also unobjected to and, in our judgment, reasonable").  Consequently, Lead Counsel respectfully requests the Court approve the expense reimbursement request.  *See Jenkins*, 300 F.R.D. at 310-11 (awarding costs in addition to the percentage fee); *Di Giacomo*, 2001 WL 34633373, at *13 (same); *Faircloth*, 2001 WL 527489, at *12 (same).

## V.     LEAD PLAINTIFF IS ENTITLED TO COSTS AND EXPENSES PURSUANT TO 15 U.S.C. §78U-4(A)(4)

The PSLRA, 15 U.S.C. §78u-4(a)(4), permits the Lead Plaintiff in this case, Omaha Police and Fire, to recoup litigation costs (including lost wages) incurred as a result of serving as Lead Plaintiff in the Action and ensuring that the Class was adequately represented. Reimbursement of such costs is allowed because it "encourages participation of plaintiffs in the active supervision of their counsel." *Varljen v. H.J. Meyers & Co., Inc.,* No. 97 Civ. 6742, 2000 WL 1683656, at *5 n.2 (S.D.N.Y. Nov. 8, 2000); *Burford*, 2012 WL 5471985, at *6.  Indeed, courts "routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." *Hicks v. Morgan Stanley*, No. 01 Civ. 10071, 2005 WL 2757792, at *10 (S.D.N.Y. Oct. 24, 2005); *In re Am. Int'l Grp., Inc. Sec. Litig*., No. 04 civ 814, 2012 WL 345509, at *6 (S.D.N.Y. Feb. 2, 2012).

Here, Omaha Police and Fire respectfully requests reimbursement of costs and expenses in the amount of $5,000.  *See* Omaha Decl., ¶8.  As set forth in its Declaration,  Omaha Police and Fire stepped forward to represent the Class and devoted many hours participating in this litigation, including, *inter alia,* (a) regularly communicating with counsel by email and telephone regarding the posture and progress of the case; (b) discussing the litigation with the Board; (c) reviewing and discussing with counsel Lead Plaintiff's complaint, amended complaint, briefing before the federal court and this Court, Lead Plaintiff's mediation statement, and the Court's orders; (d) instituting a "litigation hold" to ensure that documents related to this litigation would not be lost or destroyed; (e) providing information, including documents, to counsel; (f) discussing settlement strategy with counsel; (g) communicating with counsel regarding the settlement process and procedure; and (h) reviewing the Court's Order preliminarily approving the settlement and discussing issues relevant to the final approval process, including counsel's request for attorneys' fees and expenses.  *See* Omaha Decl., ¶5.

In light of the substantial work done by Lead Plaintiff, the amounts requested are eminently reasonable.  Moreover, they are consistent with awards in other cases, and there have been no objections thereto.  *See Burford*, 2012 WL 5471985, at \*6 (awarding named plaintiffs $5,000 to $15,000); *Jenkins*, 300 F.R.D. at 306 (awarding seven named plaintiffs $5,000 each); *Catfish*, 939 F. Supp. at 504 (awarding each of the named plaintiffs $10,000).[12]

Accordingly, Lead Plaintiff Omaha Police and Fire respectfully requests that the Court grant its request.

## VI.    CONCLUSION

For the foregoing reasons, Lead Plaintiff and Lead Counsel respectfully request the Court grant the Motion.

Date: October 21, 2014                          Respectfully submitted,

                                 */s/ John T. Jasnoch*
                                JOHN T. JASNOCH (*pro hac vice*)
                                **SCOTT+SCOTT, ATTORNEYS AT LAW, LLP**
                                707 Broadway, Suite 1000
                                San Diego, California 92101
                                Telephone:   (619) 233-4565
                                Facsimile:   (619) 233-0508
                                Email:  jjasnoch@scott-scott.com

                                */s/ Andrew A. Lemmon*
                                ANDREW A. LEMMON (#18302)
                                **LEMMON LAW FIRM, LLC**
                                15058 River Road
                                PO Box 904
                                Hahnville, LA 70057
                                Telephone:   (985) 783-6789
                                Facsimile:   (985) 783-1333
                                Email:  Andrew@lemmonlawfirm.com

---

[12]    *See also In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 699 (E.D. Mo. 2002) (approving award to class representative not to exceed $20,000); *In re Xcel Energy, Inc., Sec. Litig. Deriv. & "ERISA" Litig.*, 364 F. Supp. 2d 980, 1000 (D. Minn. 2005) ($100,000 collectively awarded to lead plaintiff group as reimbursement); *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 265 (E.D. Va. 2009) (awarding $42,000 to class representative as reimbursement for expenses incurred in reviewing documents, traveling, and attending mediation/court session); *In re Marsh & McLennan Co. Inc. Sec. Litig.*, No. 04 cv 08144, 2009 WL 5178546, at \*21 (S.D.N.Y. Dec. 23, 2009) (awarding a combined $214,657 to two institutional lead plaintiffs).

DAVID R. SCOTT
**SCOTT+SCOTT, ATTORNEYS AT LAW, LLP**
156 South Main Street
P.O. Box 192
Colchester, CT  06415
Telephone:   (860) 537-5537
Facsimile:    (860) 537-4432
Email:  david.scott@scott-scott.com

DEBORAH CLARK-WEINTRAUB
JOSEPH P. GUGLIELMO
**SCOTT+SCOTT, ATTORNEYS AT LAW, LLP**
The Chrysler Building
405 Lexington Ave., 40th Floor
New York, NY 10174
Telephone:   (212) 223-6444
Facsimile:    (212) 223-6334
Email:  dweintraub@scott-scott.com
          jguglielmo@scott-scott.com

*Attorneys for Plaintiff City of Omaha Police and Fire Retirement System*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 21, 2014, I presented the foregoing Lead Plaintiff's Memorandum of Law in Support of Motion for Award of Attorneys' Fees and Reimbursement of Litigation Costs and Expenses to the Clerk of the Court for filing and uploading to the EM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I further certify that there are no non-CM/ECF participants that require notice of this filing.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 21st day of October, 2014, at San Diego, California.

<div style="margin-left:40%">

*/s/ John T. Jasnoch*
JOHN T. JASNOCH
**SCOTT+SCOTT, ATTORNEYS AT LAW, LLP**
707 Broadway, Suite 1000
San Diego, California 92101
Telephone:   (619) 233-4565
Facsimile:     (619) 233-0508
Email:   jjasnoch@scott-scott.com

</div>

23