## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **CITY OF OMAHA POLICE & FIRE** | : | **CIVIL ACTION NO. 6:12-1609** |
| **RETIREMENT SYSTEM** | | |
| | | |
| **VERSUS** | : | **JUDGE TRIMBLE** |
| | | |
| **LHC GROUP, ET AL** | : | **MAGISTRATE JUDGE HILL** |

## <u>REPORT AND RECOMMENDATION</u>

Pending before the undersigned is Lead Plaintiff's Motion for Award of Attorneys' Fees and Reimbursement of Litigation Costs and Expenses filed by City of Omaha Police and Fire Retirement System ("Lead Plaintiff"), on October 21, 2014.  [rec. doc. 80].  No opposition has been filed.[1]

On December 11, 2014, the undersigned held a hearing [rec. doc. 83] on Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation of Settlement Proceeds filed on October 21, 2014 [rec. doc. 79], and the Motion for Award of Attorneys' Fees [rec. doc. 80].  At that hearing, the parties agreed to settle this action in the amount of $7,850,000.00 in cash. The attorneys for the class sought fees in the amount of 33 1/3% of the Settlement Fund ($2,614,050) and reimbursement of litigation expenses in the amount of $163,228.52, as well as a compensatory award of $5,000.00 to the Lead Plaintiff as reimbursement for the costs and expenses incurred as a

---

[1]LR 7.5W provides that opposition shall be filed within 21 days after service of the motion.

direct result of its representation of the Class.[2]  Defendants, LHC Group, Inc. ("LHC")

and Keith G. Myers ("Myers"), agreed to the settlement amount.  Additionally,

defendants indicated that they had no opposition to the motion or the fees, costs and

expenses requested.

By Report and Recommendation issued contemporaneously herewith, the

undersigned has recommended that Judge Trimble approve the settlement.

For the following reasons, the undersigned recommends that attorney fees of 30%

of the settlement amount ($2,355,000) be awarded, plus $163,228.52 for expenses, plus a

compensatory award of $5,000 to Lead Plaintiff, for a total of $2,523,228.52.

## Background

The background for this litigation is set forth in the Report and Recommendation

on Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of

Allocation of Settlement Proceeds, issued contemporaneously herewith.

## Law and Analysis

### *GUIDELINES FOR ATTORNEYS' FEES AND EXPENSES CALCULATION*

Lead Plaintiff seeks costs and attorney's fees against defendants pursuant to the

Settlement Agreement.  [rec. docs. 72, 79].

---

[2]The "Class" consists of all persons who purchased or otherwise acquired LHC common stock between July 30, 2008 and October 26, 2011, excluding defendants, directors and officers of LHC and their families and affiliates.  [rec. doc. 72, Stipulation, ¶ 1.4]

2

Under the "American Rule," "the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 561, 106 S.Ct. 3088, 3096, 92 L.Ed.2d 439 (1986) (*quoting Alyeska Pipeline Serice. Co. v. Wilderness Society*, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975)).  However, the United States Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S. Ct. 745, 749, 62 L. Ed. 2d 676 (1980).  The Fifth Circuit has acknowledged that the "common benefit" or "common fund" equitable doctrine allows for the assessment of attorneys' fees against a common fund created by the attorneys' efforts.  *Barton v. Drummond Co.*, 636 F.2d 978, 982 (5th Cir. 1981).

 Rule 23 of the Federal Rules of Civil Procedure was amended in 2003 to formally recognize the equitable power of the court to set common benefit fees in the class action using the following language: "In a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).

In common fund cases, courts typically use one of two methods for calculating attorneys' fees: (1) the percentage method, in which the court awards fees as a reasonable percentage of the common fund; or (2) the lodestar method, in which the court computes

fees by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate and, in its discretion, applying an upward or downward multiplier. *Union Asset Mgmt. v. Dell, Inc*., 669 F.3d 632, 642-643 (5th Cir. 2012); *Burford v. Cargill, Inc*., 2012 WL 5471985, at *1 (W.D. La. Nov. 8, 2012) (Hicks, J).

Under the percentage method, the Court is first required to determine the actual monetary value conferred to the class members by the settlement. *Burford*, 2012 WL 5471985, at * 1 (*citing In re Heartland Payment Systems, Inc. Customer Data Sec. Breach Litigation*, 851 F.Supp.2d 1040, 1075 (S.D. Tex. 2012)). The Court then sets the benchmark percentage to be applied to this value. *Id*.; *In re Heartland*, 851 F.Supp.2d at 1075. After setting the benchmark, the Court applies the *Johnson*[3] factors to determine whether a positive or negative adjustment of the benchmark is warranted. *Id*.

Under the lodestar method, determination of reasonable attorney's fees involves a two-step procedure. *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir.1995) ((*citing Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40, 51 (1983)). Initially, the district court must determine the reasonable number of hours expended on the litigation and the reasonable hourly rates for the participating lawyers. *Id*. Then, the district court must multiply the reasonable hours by the reasonable hourly rates. *Id*. The product of this multiplication is the lodestar, which the district court then either accepts or adjusts upward or downward, depending on the circumstances of

---

[3]*Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714 (5th Cir.1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989)

4

the case, after assessing the dozen factors set forth in *Johnson*.  *Wegner v. Standard Insurance Company*, 129 F.3d 814, 822 (5th Cir. 1997).

The Fifth Circuit has endorsed the district courts' use of the percentage method cross-checked with the factors set out in *Johnson*, specifically stating:

> We join the majority of circuits in allowing our district courts the flexibility to choose between the percentage and lodestar methods in common fund cases, with their analyses under either approach informed by the *Johnson* considerations.

*Dell*, 669 F.3d at 644.

District courts in this Circuit regularly use the "blended percentage method" or "hybrid percentage method" with a *Johnson* reasonableness check.  *Dell*, 669 F.3d at 643 (*citing Klein v. O'Neal, Inc*., 705 F.Supp.2d 632, 674-75 (N.D. Tex. 2010) (collecting cases); *Jenkins v. Trustmark Nat. Bank*, 300 F.R.D. 291, 307 (S.D. Miss. 2014); *Bethea v. Sprint Communications Co. L.P.*, 2013 WL 228094, at *3 (S.D. Miss. Jan. 18, 2013)*; Burford*, 2012 WL 5471985, at *1; *In re Enron Corp. Securities, Derivative & ERISA Litigation*, 586 F.Supp.2d 732, 751 (S.D. Tex. 2008); *Turner v. Murphy Oil USA, Inc*., 472 F.Supp.2d 830, 860 (E.D. La. 2007) (Fallon, J; *Batchelder v. Kerr-McGee Corp*., 246 F.Supp.2d 525, 531 (N.D. Miss. 2003); *In re Catfish Antitrust Litigation*, 939 F.Supp. 493, 501 (N.D. Miss. 1996)); *In re Bayou Sorrel Class Action*, 2006 WL 3230771, at *3-4 (W.D. La. Oct. 31, 2006) (Haik, J); *In re Educational Testing Service Praxis Principles of Learning & Teaching: Grades 7-12 Litig*., 447 F.Supp.2d 612, 628-629 (E.D. La. 2006) (Vance, J); *In re Combustion, Inc*., 968 F.Supp. 1116, 1135 (W.D. La 1997) (Haik, J).

5

In keeping with this Fifth Circuit precedent, the undersigned finds that the blended percentage approach is the appropriate method for calculating reasonable attorneys' fees in this case. *Turner*, 472 F.Supp.2d at 860-61.  Accordingly, the Court will first determine the valuation of the benefit received by the class and then select an initial benchmark percentage. *Id*.  The Court will then determine whether the benchmark should be adjusted based on the application of the *Johnson* factors to the particular circumstances of this case. *Id*.  Finally, the Court will conduct a rough lodestar analysis to cross-check the reasonableness of the percentage fee award. *Id*.

## Analysis

The focus first turns to the facts and issues presented in the Motion for Award of Attorneys' Fees and Reimbursement of Litigation Costs and Expenses.  Lead Plaintiff's counsel ("Lead Counsel") seek an award of attorneys' fees in the amount of 33 1/3% of the Settlement Fund and reimbursement of litigation expenses in the amount of $163,228.52.  Counsel also seeks a compensatory award of $5,000.00 to the Lead Plaintiff as reimbursement for the costs and expenses incurred as a direct result of its representation of the Class.  [rec. doc. 80, p. 1].  In support of this request, Lead Counsel submitted the Declaration of Deborah Clark-Weintraub in Support of Award of Attorneys' Fees and Expenses ("Weintraub Declaration"); Declaration of Daryl Scott in Support of Scott+Scott Attorneys at Law LLP's Application for Award of Attorneys' Fees and Reimbursement of Expenses ("Scott Declaration"); Declaration of Andrew

6

Lemmon in Support of the Lemmon Law Firm's Application for Award of Attorneys'

Fees and Reimbursement Expenses ("Lemmon Declaration"), and Declaration of Lead

Plaintiff City of Omaha Police and Fire Retirement System in Support of Final Approval

of Settlement and Application for Reimbursement of Costs and Expenses ("Lead Plaintiff

Declaration").

### ***Percentage Calculation***

In its motion, Lead Counsel requests an award of attorneys' fees in the amount of

33 1/3% of the amount of the Settlement Fund.  The monetary value of the settlement is

$7,850,000 in cash, plus interest earned from August 18, 2014, the date the settlement

funds are/were deposited into the escrow account.  [rec. doc. 80, p. 5].

No general rule can be articulated on what is a reasonable percentage of a common

fund. *Jenkins*, 300 F.R.D. at 307 (*citing Bethea*, 2013 WL 228094, at *3). Nonetheless,

awards commonly fall between a lower end of 20% and an upper end of 50%. *Id*. (*citing*

*Smith v. Tower Loan of Miss., Inc.*, 216 F.R.D. 338, 368 (S.D. Miss. 2003)); *In re Catfish*,

939 F.Supp. at 501 (adopting 25% benchmark); *In re Shell Oil Refinery*, 155 F.R.D. 552,

573 (E.D. La.1993) (noting most common fund fee awards range between 20% and 30%);

*Camden I Condo. Assoc., Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) ("[t]he

majority of common fund fee awards fall between 20% and 30% of the fund.").

In *Jenkins*, the court recently approved an award of one third (33.33%) of the

$4,000,000 settlement fund.  *Id*. at 306.  It is not unusual for district courts in the Fifth

Circuit to award percentages of approximately one third.  *Jenkins*, 300 F.R.D. at 307
(*citing Collins v. Sanderson Farms, Inc.*, 568 F.Supp.2d 714, 729 (E.D. La. 2008)
(Berrigan, J)).

 While the Court recognizes that a 33 1/3% contingency is common in this
geographic area, and further recognizes that a 33 1/3% contingency has been approved in
other common fund cases, the Court finds that a 30% fee is reasonable in this case.

### *Johnson Factors*

 In order to ensure the reasonableness of the percentage applied, many circuits
which apply the percentage method still make application of the lodestar factors
enunciated in *Johnson*.  *Batchelder*, 246 F.Supp.2d at 531.  While all of the *Johnson*
factors are not necessarily relevant under a percentage fee approach, courts have found
that those factors are the most proper standard with which to weigh the reasonableness of
a fee award.  *Id.*; *Bethea*, 2013 WL 228094, at *4.  A district court's *Johnson* analysis
need not be meticulously detailed: "If the district court has articulated and clearly applied
the criteria  . . . [the Fifth Circuit] will not require the trial court's findings to be so
excruciatingly explicit in this area of minutiae that decisions of fee awards consume more
paper than did the cases from which they arose."  *Kellstrom*, 50 F.3d at 331 (*quoting
Blanchard v. Bergeron*, 893 F.2d 87, 89 (5th Cir. 1990)).

 The twelve *Johnson* factors are:

 (1) the time and labor required;

(2) the novelty and difficulty of the questions;

(3) the skill requisite to perform the legal service properly;

(4) the preclusion of other employment by the attorney due to acceptance of the case;

(5) the customary fee;

(6) whether the fee is fixed or contingent;

(7) time limitations imposed by the client or the circumstances;

(8) the amount involved and the results obtained;

(9) the experience, reputation, and ability of the attorneys;

(10) the "undesirability" of the case;

(11) the nature and length of the professional relationship with the client, and

(12) awards in similar cases.

*Johnson*, 488 F.2d at 717-719.

Even though the *Johnson* factors must be addressed to ensure that the resulting fee is reasonable, not every factor need be necessarily considered. *Batchelder*, 246 F.Supp. 2d at 531-32 (*citing Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 854 (10th Cir. 1993) ("rarely are all the *Johnson* factors applicable; this is particularly so in a common fund situation.")). Based upon an application and analysis of these factors, the court can make any adjustments necessary to the benchmark percentage rate in order to ensure that a reasonable amount is awarded. *Id*.

9

A listing of the factors and analysis of each factor as it applies in this case follow.

### *(1) Time and labor involved*

This lawsuit was filed on June 13, 2012, and litigated for approximately two and a half years.  During the course of the litigation, Lead Counsel conducted a detailed investigation of potential claims against LHC and Myers; filed a motion for appointment of Lead Plaintiff and Lead Counsel; oversaw investigative interviews of numerous witnesses; prepared a detailed amended complaint; filed a 27-page opposition to defendants' 34-page  motion to dismiss; opposed defendants' interlocutory appeal; filed a motion to compel; drafted Freedom of Information Act requests to the Securities and Exchange Commission ("SEC") and the Office of Inspector General, Department of Health and Human Services; prepared initial disclosures and propounded requests for production of documents upon defendants; received and reviewed over 137,000 pages of documents produced by defendants and the SEC; responded to defendants' requests for production and interrogatories; engaged in multiple telephone conferences regarding the scope of discovery; consulted with experts and consultants in the fields of economics and damages; filed a motion for preliminary approval of class settlement; prepared two detailed mediation briefs; attended a full-day mediation and had numerous follow-up communications with the mediator; spent weeks negotiating the settlement terms; filed a motion for final approval of settlement, and participated in several status conferences with the Court.  [Weintraub Declaration, p. 2].  As of the date of filing the instant motion,

Lead Counsel had spent approximately 2,141.2 hours litigating this case.  [Scott Declaration, ¶ 5; Lemmon Declaration, ¶ 5].

The undersigned observes that all counsel have done a substantial amount of work in this case.  However, because this matter was resolved prior to summary judgment and trial, this saved the parties time and expense.  The undersigned finds that the amount of work in this case is accurately reflected in the nature of an award based upon percentage of recovery; therefore, this factor does not significantly affect the reasonableness of the award.  *Batchelder*, 246 F.Supp.2d at 532.  Accordingly, I find that this factor does not warrant an adjustment to the benchmark.

## *(2) Novelty and Difficulty of the Issues*[4]

The Amended Complaint asserts claims for securities fraud under §§ 10(b), 20(a) and 20A of the Securities and Exchange Act of 1934 and Rule 10b-5, 17 C.F.R. § 240.10b-5, which is a highly technical and complicated area of the law.  The Fifth Circuit recognizes that shareholder derivative actions are "notoriously difficult and unpredictable."  *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983) (*citing Schimmel v. Goldman*, 57 F.R.D. 481, 487 (S.D.N.Y. 1973).  In fact, Fifth Circuit decisions on causation, pleading and proof at the class certification stage make Private

---

[4]In *Walker v. U.S. Dept. of Housing and Urban Development*, 99 F.3d 761, 772 (5th Cir. 1996), the Fifth Circuit noted that the Supreme Court has limited greatly the use of the second, third, eighth, and ninth *Johnson* factors.

Securities Litigation Reform Act ("PSLRA")[5] claims particularly difficult to prosecute in this circuit. *In re OCA,* 2009 WL 512081, at *21.

Given the inherent difficulty involved in securities class actions and the special difficulty of bringing those cases in the Fifth Circuit, the Court finds that consideration of this factor warrants a substantial fee. The difficulty and complexity of securities class action litigation in this Circuit has led the undersigned to recommend a fee of 30%.

### *(3) The skill required to Perform the Legal Services Properly*

The firm resume of Lead Counsel indicates that Scott+Scott has significant expertise in complex securities litigation involving stock fraud. [Scott Declaration, Exhibit A]. This skill was demonstrated through the numerous pleadings filed in this case, particularly in opposing defendants' highly detailed Motion to Dismiss. Lead Counsel also acknowledges that defendants "were represented by highly experienced lawyers from prominent and well-respected law firms." [rec. doc. 81, p. 13]. *See Walco Investments, Inc. v. Thenen*, 975 F.Supp.1468, 1472 (S.D. Fla. 1997) ("[g]iven the quality of defense counsel from prominent national law firms, the Court is not confident that attorneys of lesser aptitude could have achieved similar results"); *Billitteri v. Securities America, Inc.*, 2011 WL 3585983, *7 (N.D. Tex. Aug. 4, 2011) ("[B]ecause of the

---

[5]In securities class actions, the notice must satisfy the disclosure requirements of the Private Securities Litigation Reform Act (PSLRA). *In re OCA, Inc. Securities & Derivative Litig.*, 2009 WL 512081, at *7 (E.D. La. March 2, 2009) (Vance, J).

extremely effective work of opposing counsel . . . . The skill required here . . . certainly justifies the contemplated award").

In light of the quality of all counsel's work product and conduct before this Court, I find that consideration of this factor justifies a substantial fee award.  Again, the Court has given great weight to this factor in recommending an award of a 30% fee.

### (4) Preclusion of other employment

This factor "involves the dual consideration of otherwise available business which is foreclosed because of conflicts of interest which occur from the representation, and the fact that once the employment is undertaken the attorney is not free to use the time spent on the client's behalf for other purposes." *Burford*, 2012 WL 5471985, at *3 (*quoting Johnson*, 488 F.2d at 718)).  The undersigned observes that Lead Counsel has spent approximately 2,141.2 hours litigating this case over a two-and-a-half-year period.  [Scott Declaration, ¶ 5; Lemmon Declaration, ¶ 5].  Given the significant amount of time devoted to this case, Lead Counsel was probably precluded from working on other matters.

However, a number of attorneys worked on this case, and the hours are not itemized to show any delays in the lawyers' other legal work.  *In re Educ. Testing Serv.*, 447 F.Supp.2d at 632 (*citing Johnson*, 488 F.2d at 718).  Further, the Fifth Circuit has held that preclusion of other employment is generally subsumed in the lodestar calculation.  *Shipes v. Trinity Industries*, 987 F.2d 311, 321-322 (5th Cir. 1993); *Heidtman*

*v. County of El Paso*, 171 F.3d 1038, 1043 (5th Cir.1999).  Thus, this factor does not support an enhancement of the lodestar.

### (5) Customary fee

The customary fee for similar work in the community should be considered, as "it is open knowledge that various types of legal work command differing scales of compensation."  *Burford*, 2012 WL 5471985, at *3 (*quoting Johnson*, 488 F .2d at 718)). In the Western District of Louisiana, the customary contingency fee for representation of plaintiffs "ranges from 33 1/3% to 50% of the gross award plus costs for cases requiring the institution and prosecution of litigation."  *Id.* (*quoting In re Bayou Sorrel Class Action*, 2006 WL 3230771, *5 (W.D. La. Oct. 31, 2006)).[6]  Thus, this factor supports approval of the 30% fee which, in this case, constitutes a substantial award.  *Id.*

### (6) Fixed or contingent fee

"The fee quoted to the client or the percentage of the recovery agreed to is helpful in demonstrating the attorney's fee expectations when he accepted the case."[7]  *Burford*, 2012 WL 5471985, at *4 (*quoting Johnson*, 488 F.2d at 718).  Here, Lead Counsel undertook this complex securities class action on a contingent fee basis, assuming a significant risk of nonpayment.  *Jenkins*, 300 F.R.D. at 309.  In recognizing the

---

[6]The Court's own experience in contingency fee cases indicates that, currently, most contingency fees in this geographic area are in the 33 1/3% to 40% range.

[7]In *Walker*, 99 F.3d at 772, the Fifth Circuit noted that the Supreme Court has barred any use of the sixth factor.  *See City of Burlington v. Dague*, 505 U.S. 557, 567, 112 S.Ct. 2638, 2643, 120 L.Ed.2d 449 (1992); *Shipes*, 987 F.2d at 320.

contingent risk of nonpayment in class action cases, courts have found that class counsel

ought to be compensated  . . .  for risk of loss or nonpayment assumed by carrying through

with the case.  *Turner*, 472 F.Supp.2d at 859-860 (*citing In re Combustion,* 968 F.Supp. at

1132.  Because this fee award is comparable to a reasonable contingency fee award, I find

that consideration of this factor does not justify an increase to the fee award.  *In re Educ.*

*Testing Serv.*, 447 F.Supp.2d at 631.

### (7) Time limitations

Lead Counsel states that this factor does not pertain to this case.[8]  [rec. doc. 80, p.

15].

### (8) The Time Involved and the Results Obtained[9]

The most critical factor in determining the reasonableness of a fee award is the

degree of success obtained.  *Slipchenko v. Brunel Energy, Inc.*, 2015 WL 338358, at *21

(S.D. Texas Jan. 23, 2015) (*citing Heartland Payment Systems, Inc. Customer Data Sec.*

*Breach Litigation*, 851 F.Supp.2d 1040, 1085 (S.D. Tex. 2012)).  Approximately two and

a half years after the complaint was filed, the parties were able to settle this matter.

Under the proposed settlement, the Class will receive $7,850,000, plus interest in

exchange for the release of all claims against defendants.  Based on preliminary damage

studies prepared by Lead Plaintiff's expert on causation and damages, this equates to

---

[8]The seventh factor is subsumed in the number of hours reasonably expended.  *Walker*, 99
F.3d at 772.

[9]The Supreme Court has greatly limited the use of this factor.  *Walker*, 99 F.3d at 771.

approximately 7.4%-10.3% of estimated provable damages.  [rec. doc. 80, p. 15].  The

typical recovery in most class actions generally is three-to-six cents on the dollar.  *In re*

*Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F.Supp.2d 732, 804 (S.D. Tex. 2008).

The undersigned finds that a high degree of success has been obtained in this

matter.  *Burford*, 2012 WL 5471985, at *4.  However, trial was not required. Counsel

agreed to a 33 1/3% contingency which would have included trial. Accordingly, the Court

concludes that a small percentage reduction from the agreed upon percentage is

appropriate.

### *(9) The Experience, Reputation and Ability of Counsel*[10]

The declarations filed in the record provide evidence of the experience, reputation,

and ability of Class Counsel.  [rec. doc. 80, Weintraub, Scott and Lemmon Declarations].

Additionally, the Court notes that all of the attorneys have performed in an exemplary

manner in this complex securities fraud litigation.  However, this factor is accounted for

in the contingency percentage recommended by the Court.

### *(10) The Undesirability of the Case*

Cases may be deemed "undesirable" when "the defendant is a large corporation

with substantial resources, financial and otherwise, for a vigorous defense; and the legal

and factual issues presented risks to recovery absent settlement."  *Burford*, 2012 WL

5471985, at *5 (*citing Heartland Payment Systems*, 851 F.Supp.2d at 1085).

_____

[10]The Supreme Court has greatly limited the use of this factor.  *Walker*, 99 F.3d at 771.

16

Here, LHC is a large corporation with substantial resources, as indicated by the fact that it hired the large and well-established Louisiana law firm Jones Walker and the Atlanta Georgia law firm Alston & Bird to defend it in this case.  Additionally, this complex securities litigation presented risks that required investigation and informal discovery to uncover and analyze, as well as risk of no recovery.  *Di Giacomo v. Plains All American Pipeline*, 2001 WL 34633373, at *12 (S.D. Texas Dec. 19, 2001).  These factors speak directly to the undesirability of the case.  However, the Court finds that the percentage fee recommended adequately addresses this factor.

### (*11*) *The nature and length of the professional relationship with the client*

Lead Counsel has represented Lead Plaintiff since at least 2009.  [Weintraub Declaration, ¶ 22].  The Declaration of James Sklenar, Chairman of Omaha Police and Fire ("Lead Plaintiff Declaration"), indicates that he has been in regular contact with Lead Counsel and estimates that he and other board members have spent approximately 38.5 hours participating in the litigation activities.  [Lead Plaintiff Declaration, ¶¶ 4, 8]. In a case such as this, where counsel has been quickly responsive to class members who needed explanations, assistance, and assurances, the eleventh factor weighs in favor of a substantial award.  *Burford*, 2001 WL 5471985, at *5 (*citing In re Bayou Sorrel*, 2006 WL 3230771, at *6).  However, I find the fee adequately compensates for this factor.

### (12) Awards in similar cases

As indicated above, the customary contingency fee in the Western District of Louisiana for representation of plaintiffs in class actions "ranges from 33 1/3% to 50% of the gross award plus costs for cases requiring the institution and prosecution of litigation."  *Id*. (*quoting In re Bayou Sorrel Class Action*, 2006 WL 3230771, *5)).  Thus, an award of 30% of the common fund is reasonable and typical and does not justify an enhancement of the award.  *Id*.

In conclusion, two of the *Johnson* factors merit an increase in the fee award: the novelty and difficulty of the issues and the undesirability of the case.  The undersigned finds that these factors support the fee award of 30% of the settlement fund.  A much stronger showing on the *Johnson* factors would have been necessary to justify a higher fee.  *See In re Educ. Testing Serv*., 447 F.Supp.2d at 632 (class counsel awarded 29% of the requested 40% of the settlement fund where two of the *Johnson* factors were met).

### Lodestar Cross-Check

In the final step, the Court conducts a rough lodestar analysis to cross-check the reasonableness of the percentage fee award.  *Turner*, 472 F.Supp.2d at 861.  The lodestar analysis is not undertaken to calculate a specific fee, but only to provide a rough cross-check on the reasonableness of the fee arrived at by the percentage method.  *Id*.

Lead Counsel reportedly expended approximately 2,141.2 hours, at hourly rates of up to $775 per hour for the attorneys at Scott+Scott in New York, and $625 per hour for

the attorneys at the Lemmon firm in New Orleans. The resulting lodestar for the services performed is $1,225,920.50.

To determine reasonable rates, a court considers the attorneys' regular rates as well as prevailing rates in the community. *Kellstrom*, 50 F.3d at 328. The "relevant community" for the purpose of awarding attorney fees is the judicial district in which the litigation occurred. *Talen's Marine & Fuel, L.L.C. v. Con Dive, LLC*, 2011 WL 1595274, *3 (W.D. La. Apr. 21, 2011) (Hanna, J).

The undersigned is unaware of any local law firms (in the Lafayette Louisiana geographic area) who handle this type of litigation routinely, so there are no firms in this area which can be used for realistic comparison. The undersigned has checked rates in metropolitan areas in the south and southwest for attorneys involved in securities class actions. Given the undersigned's knowledge of the legal market in complex securities class actions, I find that the rates charged by Lead Counsel, while on the high end, are within the reasonable range. *See In re Enron*, 586 F.Supp.2d at 780 (noting that fees ranging from $400-$795 per hour for partners and $210-$460 per hour for associates were in accord with prevailing market rates for big firms in Houston/Dallas Texas). Using these hours and rates, the undersigned calculates a lodestar baseline of $1,225,920.50, which matches Lead Plaintiff's calculations. [Scott Declaration, pp. 1-2; Lemmon Declaration, p. 1].

The purpose of a lodestar cross-check of the results of a percentage fee award is to avoid windfall fees, that is, to "ensure that the percentage approach does not lead to a fee that represents an extraordinary lodestar multiple."  *In re Enron*, 586 F.Supp.2d at 751-752 (*citing In re Cendant Corp. Sec. Litig.* ("*Cendant I*"), 264 F.3d 201, 285 (3d Cir. 2001); *In re Cendant Corp. Sec. Litig.* ("*Cendant II*"), 404 F.3d 173, 188 (3d Cir. 2005)). A cross-check is performed by dividing the proposed fee award by the lodestar calculation, resulting in the lodestar multiplier.  *Id*. (*citing In re AT & T Corp*., 455 F.3d 160, 164 (3d Cir. 2006)).

The multiplier represents the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors.  *Id*. (*citing In re Global Crossing Sec. & ERISA Litig*., 225 F.R.D. 436, 468 (S.D. N.Y.)).  The "risk multiplier" is not considered separately in the Fifth Circuit but included with the *Johnson* factor evaluation.  *In re Combustion*, 968 F. Supp. at 1135 (*citing Longden v. Sunderman*, 979 F.2d 1095, 1099 (5th Cir.1992); *In re Shell Oil Refinery*, 155 F.R.D. at 572 (discussion of risk incorporated in the "undesirability of the case.")).

Since the multiplier can then be "adjusted to account for particular circumstances, such as the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risks involved, if the court considers the multiplier too great, it should reduce the award."  *In re Enron*, 586 F.Supp.2d at 751-752 (*citing In re Global Crossing* at 164 & n. 4).  It can also upwardly adjust the multiplier in

rare and exceptional cases where such a modification is justified by specific evidence in the record and detailed findings by the court. *Id*. The multiplier need not fall within any predefined range, provided that the district court analysis justifies the award. *Id*. (*citing In re Rite Aid Corp. Securities Litigation*, 396 F.3d 294, 307 (3rd Cir. 2005)).

The Court may consider multipliers used in comparable cases. *Id*. (*citing Rite Aid*, 396 F.3d at 307 n. 17). Multipliers ranging from one to four frequently are awarded in common fund cases when the lodestar method is applied. *In re Combustion, Inc*., 968 F. Supp. at 1133-34 (*citing In re Shell Oil Refinery*, 155 F.R.D. 552, 573 (E.D. La.1993) (applying risk multiplier of 3 to 3.5) (and cases cited at note 55)). A large common fund award may warrant an even larger multiplier. *Id*. (*citing In re Beverly Hills Fire Litigation*, 639 F.Supp. 915 (E.D. Ky. 1986) (multiplier of 5 for lead counsel for contingency and superior trial skills in personal injury class action)).

The Court must adjust the lodestar by the *Johnson* factors to determine an appropriate multiplier. Here, dividing the proposed fee award by the lodestar calculation results in a lodestar multiplier of 1.92 which is on the lower end of approved multipliers. *In re Combustion, Inc.* The Court finds that a multiplier of 1.92 falls within the range applied in this district and Circuit. This multiplier adequately accounts for the novelty and difficulty of the issues, the results obtained and the undesirability of the case.

The Court recommends an attorney fee award of 30% of the settlement fund or $2,355,000. This fairness of this fee award is further confirmed by the lodestar

calculation.

### *Compensatory Award*

Federal courts often approve incentive awards in class action lawsuits to compensate named plaintiffs for the services they provide and burdens they shoulder during litigation. *In re Educ. Testing Serv*., 447 F.Supp.2d at 633-34 (*citing In re Catfish*, 939 F.Supp. at 503-04)).  Here, the class representatives were involved in initiating the litigation, and were willing to incur costs and expenses and be subjected to discovery on behalf of the class.  *Id*.  The Court finds that there is an adequate basis to award a compensatory award to Lead Plaintiff in the amount of $5,000, and so recommends.

### *Expenses*

Finally, the request for costs and expenses totaling $163,228.52 in costs and expenses must be addressed.

An attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund.  *In re Ikon Office Solutions, Inc., Sec. Litig.,* 194 F.R.D. 166, 192 (E.D. Pa. 2000).  Counsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action.  *In re Safety Components, Inc. Sec. Litig*., 166 F.Supp.2d 72, 108 (D. N.J. 2001).

Lead Counsel requests an award of $163,228.52 in expenses.  In support of the award, Lead Counsel has submitted  declaration itemizing the expenses.  [Scott

Declaration, p. 2; Lemmon Declaration, p. 2].  These include the following categories: postage and courier; document production and electronic database set up and maintenance; expert fees; filing, witness and other fees; mediation; on-line research; photocopies; press releases; staff overtime; telephone, facsimile and data, and travel (meals, hotels and transportation).  Courts have permitted recovery of similar expenses. *See Jenkins*, 300 F.R.D. at 310-11 (approving reimbursement of $181,213.18 in litigation expenses for expert fees, travel costs and administrative expenses including filing fees, PACER charges, copies, postage, delivery fees and similar expenses); *In re Remeron End-Payor Antitrust Litig.*, 2005 WL 2230314, at *32 (D. N.J. Sept. 13, 2005) (approving reimbursement of litigation expenses including substantial fees for experts; substantial costs associated with creating and maintaining an electronic document database; travel and lodging expenses; copying costs, and the costs of deposition transcripts).

The Court has reviewed the itemized expenses and finds that the asserted expenses are reasonable.  Accordingly, the undersigned finds that the full amount of the expenses should be awarded in addition to the percentage fee.  *See In re OCA*, Inc., 2009 WL 512081, at *26 (class counsel awarded full amount of $179,466.05 in expenses in addition to percentage fee of $1,852,500).

Defendants have not objected to the amount of expenses incurred.  Accordingly, I recommend that the Court award the full amount of $163,228.52 in costs and expenses.

## CONCLUSION

For the foregoing reasons, it is recommended that 30% of the settlement fund ($2,355,000) be awarded for attorneys' fees, that $163,228.52 in expenses be awarded and $5,000 be awarded as compensation to Lead Plaintiff, for a total of $2,523,228.52.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc.72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN FOURTEEN (14) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.  *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR.**

**1996).**

February 11, 2015, at Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE

26